**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **IMPERIUM IP HOLDINGS (CAYMAN), LTD.,**<br><br>        **Plaintiff,**<br><br>        v.<br><br>**SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, SAMSUNG SEMICONDUCTOR, INC., SAMSUNG TECHWIN CO., LTD., AND SAMSUNG OPTO-ELECTRONICS AMERICA, INC. (D/B/A SAMSUNG TECHWIN AMERICA),**<br><br>        **Defendants.** | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Imperium IP Holdings (Cayman), Ltd. ("Imperium") files this Complaint for Patent Infringement against Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC, Samsung Semiconductor, Inc., Samsung Techwin Co., Ltd., and Samsung Opto-Electronics America, Inc. (d/b/a Samsung Techwin America) (collectively, "Defendants") and asserts as follows:

**THE PARTIES**

1. Imperium is an intellectual property company that holds more than 70 patents on core technologies relating to image sensors and other features used in consumer electronic products such as cell phones, digital cameras, tablet computers, and laptops. Years ago, at the request of the United States Government, a team of engineers at Imperium's predecessor-in-interest developed image sensor technologies for use in military applications, and

subsequently developed those technologies for commercial uses as well. At a high level, an image sensor is a device that converts an optical image into electronic signals, such as those used by digital cameras and cell phones. Imperium's predecessors to this imaging technology went on to include a publicly traded U.S. corporation that also designed and manufactured products in the field of DVDs and other audiovisual equipment. Ultimately, as the owner of a broad array of patent rights directed to image sensors, Imperium has licensed its patents including the patents-in-suit. Imperium has a place of business at 400 Madison Avenue, Second Floor, New York, New York 10022, and is incorporated in the Cayman Islands.

2. On information and belief, Defendant Samsung Electronics Co., Ltd. ("SEC") is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 416, Maetan 3-dong, Yeongtong-gu, Suwon-si, Gyeonggi-do 443-742, Korea.

3. On information and belief, Defendant Samsung Techwin Co., Ltd. ("STC") is a subsidiary of Defendant SEC and a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 647-9 Yeoksam-Dong, Kangnam-gu, Seoul 135-080, Korea.

4. On information and belief, Defendant Samsung Telecommunications America, LLC ("STA") is a subsidiary of Defendant SEC and a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in this jurisdiction at 1301 East Lookout Drive, Richardson, Texas 75082.

5. On information and belief, Defendant Samsung Opto-Electronics America, Inc. ("SOA") is a subsidiary of Defendants SEC and STC, and a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 100 Challenger Road, Suite 700, Ridgefield Park, New Jersey 07660, and offices based in Texas at 1304 Langham Creek Drive, Houston, Texas 77084, and 11757 Katy Freeway, Houston, Texas 77079. On information and belief, Defendant SOA operates under the name Samsung Techwin America.

6. On information and belief, Defendant Samsung Electronics America, Inc. ("SEA") is a subsidiary of Defendant SEC and a corporation organized and existing under the laws of the State of New York, with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660.

7. On information and belief, Defendant Samsung Semiconductor, Inc. ("SSI") is a subsidiary of Defendant SEC and a corporation organized and existing under the laws of the State of California, with its principal place of business at 3655 North First Street, San Jose, California 95134.

## JURISDICTION AND VENUE

8. This is a complaint for patent infringement that arises under the laws of the United States, Title 35 of the United States Code.

9. This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

10. This Court has personal jurisdiction over Defendant SEC in this action because SEC has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over SEC would not offend traditional notions of fair play and substantial justice. Defendant SEC, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by among other things offering to sell and selling products that infringe the asserted patents.

11. This Court has personal jurisdiction over Defendant STC in this action because STC has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over STC would not offend traditional notions of fair play and substantial justice. Defendant STC, directly and through subsidiaries or intermediaries (including distributors, retailers, and others),

has committed and continues to commit acts of infringement in this District by among other things offering to sell and selling products that infringe the asserted patents.

12. This Court has personal jurisdiction over Defendant STA in this action because STA has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over STA would not offend traditional notions of fair play and substantial justice. Defendant STA, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by offering to sell and selling products that infringe the asserted patents. Moreover, Defendant STA has a principal place of business in this jurisdiction and is registered to do business in Texas with the Texas Secretary of State. STA designated The Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701, as its registered agent.

13. This Court has personal jurisdiction over Defendant SOA in this action because SOA has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over SOA would not offend traditional notions of fair play and substantial justice. Defendant SOA, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by among other things offering to sell and selling products that infringe the asserted patents. SOA also has offices in this jurisdiction and is registered to do business in Texas with the Texas Secretary of State. SOA designated Seung Joo Yang, 1304 Langham Creek Drive, Suite 212, Houston, Texas 77084, as its registered agent.

14. This Court has personal jurisdiction over Defendant SEA in this action because SEA has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over SEA would not offend traditional notions of fair play and substantial justice. Defendant SEA, directly and through subsidiaries or intermediaries (including distributors, retailers, and others),

has committed and continues to commit acts of infringement in this District by among other things offering to sell and selling products that infringe the asserted patents. SEA has also been authorized to do business in the State of Texas by the Texas Secretary of State. Further, SEA designated C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201, as its registered agent.

15. This Court has personal jurisdiction over Defendant SSI in this action because SSI has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over SSI would not offend traditional notions of fair play and substantial justice. Defendant SSI, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in by among other things offering to sell and selling products that infringe the asserted patents. Defendant SSI is also authorized by the Texas Secretary of State to do business in the State of Texas and designated C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201, as its registered agent.

16. Venue is proper in the Eastern District of Texas under 28 U.S.C. §§ 1391(b)-(c) and 1400 because Defendants have committed acts of direct and indirect infringement in the Eastern District of Texas and have transacted business in the Eastern District of Texas.

17. As more fully set forth below, the patents owned and asserted by Imperium in this case include United States Patent No. 6,271,884. That patent was the subject of a prior litigation recently handled by this District, thus making this action a "related" case under this District's Local Patent Rule 2-6. *See Imperium (IP) Holdings, Inc. v. Apple Inc., et al.*, Case No. 4:11-CV-163-RC-ALM (E.D. Tex.).

## COUNT ONE
## INFRINGEMENT OF U.S. PATENT NO. 6,271,884

18. Imperium re-alleges and incorporates by reference paragraphs 1-17 above.

19. On August 7, 2001, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 6,271,884 (the "'884 Patent"), entitled "Image Flicker Reduction with Fluorescent Lighting." Imperium is the owner of the '884 Patent, a true and correct copy of which is attached as Exhibit A to this Complaint.

20. The '884 Patent relates to methods and an apparatus for reducing "flicker" and the degraded image quality caused by light having a periodic intensity. To overcome this problem, the '884 Patent discloses and claims inventive methods directed to, *inter alia*, setting an integration time of an imager to an integral multiple of the period of the periodic intensity of the lighting, determining an amount to vary an overall system gain, and adjusting the overall system gain by adjusting the integration time while maintaining the integration time at an integral multiple of the period of the periodic intensity.

21. Defendants have infringed and continue to infringe one or more claims of the '884 Patent, in violation of 35 U.S.C. § 271, by manufacturing, using, selling, offering for sale, and/or importing devices with image sensors, including, but not limited to, the following (collectively referred to as the "'884 Accused Devices"): *cell phones* such as the Galaxy Ace (GT-S5830), the Nexus S (GT-i9020T), the Alias (SCH-U740), the Galaxy Portal/Spica/Lite (GT-i5700), the Intensity II (SCH-U460), the Galaxy S2 and S3, and the Pixon 12 (M8910); *network cameras* such as SNF-7010 network camera, the SNB-5004 and SND-5084 network cameras, the SNB-6003 and SNB-6004 network cameras, and the SND-6084 and SND6084R network cameras; *tablet computers* such as the Galaxy Tab 7.0 and Tab 7.7 tablets, the Galaxy Tab 10.1 (GT-P7510) and Galaxy Tab 2 10.1 (GT-P51XX); *laptop computers* such as the Samsung ATIV Book 9, Book 9 Lite, and Book 9 Plus laptops, and the Samsung Series 3, 5, 6, 7, and 9 laptops, and any such reasonably similar products.

22. By way of example, the '884 Accused Devices include a system or method that sets an integration time to an integral multiple of the period of the periodic intensity of the lighting. The '884 Accused Devices include a system or method that determines an amount to vary an overall system gain. The '884 Accused Devices include a system or method that adjusts the overall system gain by adjusting the integration time while maintaining the integration time at an integral multiple of the period of the periodic intensity.

23. Defendants also indirectly infringe the '884 Patent by inducing infringement by others, such as manufacturers, resellers, and/or end-users of the '884 Accused Devices, of one or more claims of the '884 Patent in violation of 35 U.S.C. § 271. On information and belief, Defendants knew of the '884 Patent and knew of its infringement, including by way of this lawsuit and, earlier, by way of third-party subpoenas served on Samsung Semiconductor, Inc. in March 2012 that identified Imperium's '884 Patent.

24. Defendants' affirmative acts in this District of selling the '884 Accused Devices, causing the '884 Accused Devices to be manufactured and distributed, and providing instruction manuals for the '884 Accused Devices have induced and continue to induce Defendants' manufacturers, resellers, and/or end-users to make or use the '884 Accused Devices in their normal and customary way to infringe the '884 Patent. Defendants specifically intended and were aware that these normal and customary activities would infringe the '884 Patent. Defendants performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '884 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.

25. Defendants also indirectly infringe the '884 Patent by manufacturing, using, selling, offering for sale, and/or importing the '884 Accused Devices with knowledge that the '884 Accused Devices were and are especially manufactured and/or especially adapted for use in an infringement of the '884 Patent, and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

26. The '884 Patent describes the invention of a circuit with the function of reducing flicker caused by light having a periodic intensity. Each of the '884 Accused Devices contains an image sensor with a circuit that performs this function in the manner claimed in the '884 Patent. On information and belief, this circuit is integrated into the image sensor, which is mounted directly onto a circuit board for use in the device. Further, on information and belief, individual portions of the image sensor are not designed to operate in isolation; they are designed to operate in unison. Accordingly, without this circuit or its function, the image sensor would either not function or function in an unintended manner. From this, the most compelling inference that arises is the image sensor has no substantial non-infringing uses, and that any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental. Defendants' manufacture, use, sale, offering for sale, and/or importation of the '884 Accused Devices to resellers and/or end-users constitutes contributory infringement of the '884 Patent.

27. On information and belief, including the allegations above showing knowledge and intent, Defendants' infringement has been and continues to be deliberate, willful, and in reckless disregard of Imperium's patent rights.

28. Imperium has been, and continues to be, damaged by Defendants' infringement of the '884 Patent.

**COUNT TWO**
**INFRINGEMENT OF U.S. PATENT NO. 6,836,290**

29. Imperium re-alleges and incorporates by reference paragraphs 1-17 above.

30. On December 28, 2004, the U.S. Patent and Trademark Office duly and legally issued United States Patent No. 6,836,290 (the "'290 Patent"), entitled "Combined Single-Ended and Differential Signaling Interface." Imperium is the owner of the '290 Patent, a true and correct copy of which is attached as Exhibit B to this Complaint.

31. The '290 Patent relates to, *inter alia*, an inventive data interface circuit and CMOS ("complementary metal-oxide semiconductor") imaging apparatus. For example, the

'290 Patent has claims directed to a data interface circuit comprising a first single-ended interface connected to a first signal output line, a second single-ended interface connected to a second signal output line; and a differential interface having a normal signal output connected to the first output line and a complementary signal output connected to the second signal output line, wherein an output of the data interface circuit is selectable between a single-ended interface output and a differential interface output.

32. Defendants have infringed and continue to infringe one more claims of the '290 Patent, in violation of 35 U.S.C. § 271, by manufacturing, using, selling, offering for sale, and/or importing devices including, but are not limited to, the following (collectively referred to as the "'290 Accused Devices"): *cell phones* such as the Galaxy Ace (GT-S5830), the Nexus S (GT-i9020T), the Galaxy S2, S3, and S4, and the Galaxy Note 3; *tablet computers* such as the Galaxy Tab 7.0 and Tab 7.7 tablets, the Galaxy Tab 10.1 (GT-P7510) and Galaxy Tab 2 10.1; and any such reasonably similar products.

33. By way of example, the '290 Accused Devices include a CMOS image sensor, a data interface circuit, a first single-ended interface connected to a first signal output line, a second single-ended interface connected to a second signal output line, and a differential interface having a normal signal output connected to the first output line, as well as a complementary signal output connected to the second signal output line, and an image processor connected to the CMOS image sensor to receive signals output by the data interface circuit. The '290 Accused Devices have an output of the data interface circuit that is selectable between a single-ended output and a differential interface output.

34. The '290 Patent also discloses and claims an inventive image-processing method. For example, the '290 Patent has claims directed to an image processing method that

comprises the steps of: forming an analog image signal using a plurality of CMOS image sensing pixels; converting the analog image signal to form a plurality of digital output signals; transferring the digital output signals through either a single-ended or a differential interface circuit, as selected, to a digital image processor; wherein when the single-ended output is selected, one bit is transferred per clock cycle on each signal output line, and when the differential output is selected, one half of the total output bits are transferred on a first edge of a clock, and a second halt of the output bits are transferred on a second edge of the clock, using the same total number of pins as used in by the single-ended interface.

35. Defendants also indirectly infringe the '290 Patent by inducing infringement by others, such as manufacturers, resellers, and/or end-users of the '290 Accused Devices, of one or more claims of the '290 Patent in violation of 35 U.S.C. § 271. On information and belief, Defendants knew of the '290 Patent and knew of its infringement, including by way of this lawsuit and earlier. For example, Defendants knew of the '290 Patent at least as early as April 2008, when Defendant SEC identified the '290 Patent to the U.S. Patent and Trademark Office in its initial filing of U.S. Patent Application No. 12/103,823.

36. Defendants' affirmative acts of selling the '290 Accused Devices, causing the '290 Accused Devices to be manufactured and distributed, and providing instruction manuals for the '290 Accused Devices have induced and continue to induce Defendants' manufacturers, resellers, and/or end-users to make or use the '290 Accused Devices in their normal and customary way to infringe the '290 Patent. Defendants specifically intended and were aware that these normal and customary activities would infringe the '290 Patent. Defendants performed the acts that constitute induced infringement, and would induce actual infringement, with the

knowledge of the '290 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.

37. Defendants also indirectly infringe the '290 Patent by manufacturing, using, selling, offering for sale, and/or importing the '290 Accused Devices to resellers and/or end-uses with knowledge that the '290 Accused Devices were and are especially manufactured and/or especially adapted for use in an infringement of the '290 Patent, and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

38. The '290 Patent describes the invention of a circuit with the function of a data interface. Each of the '290 Accused Devices contains a Samsung CMOS image sensor with a circuit that performs this function in the manner described and claimed in the '290 Patent. On information and belief, this circuit is integrated into the image sensor, which is mounted directly onto a circuit board for use in the device. Further, on information and belief, individual portions of the processor and/or image sensor are not designed to operate in isolation; they are designed to operate in unison. Accordingly, without this circuit or its function, the processor and/or image sensor would either not function or function in an unintended manner. From this, the most compelling inference that arises is the processor and/or image sensor has no substantial non-infringing uses, and that any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental. Defendants' manufacture, use, sale, offering for sale, and/or importation of the '290 Accused Devices to resellers and/or end-users constitutes contributory infringement of the '290 Patent.

39. On information and belief, including the allegations above showing knowledge and intent, Defendants' infringement has been and continues to be deliberate, willful, and in reckless disregard of Imperium's patent rights.

40. Imperium has been damaged, and continues to be damaged, by Defendants' infringement of the '290 Patent.

## COUNT THREE
## INFRINGEMENT OF U.S. PATENT NO. 7,092,029

41. Imperium re-alleges and incorporates by reference paragraphs 1-17 above.

42. On August 15, 2006, the U.S. Patent and Trademark Office duly and legally issued United States Patent No. 7,092,029 (the "'029 Patent"), entitled "Strobe Lighting System for Digital Images." Imperium is the owner of the '029 Patent, a true and correct copy of which is attached as Exhibit C to this Complaint.

43. The '029 Patent relates to inventive systems and methods for determining the amount of supplemental flash lighting needed to properly expose a photographic subject (as used, for example, in digital cameras, cell phones, etc.). The '029 Patent has claims directed to, *inter alia*, a method of adjusting image lighting, the method comprising: generating a preparatory light for a predetermined preparatory duration; capturing a preparatory image while generating the preparatory light, wherein the preparatory image is represented by preparatory image data; determining an average preparatory image luminance of the preparatory image based on the preparatory image data and weighting at least a subset of the preparatory image data; generating a supplemental strobe duration based on the average preparatory image luminance and luminance weightings; and generating a look-up table storing associated image strobe durations and power values including a preparatory image strobe duration and associated preparatory power value.

44. Defendants have infringed and continue to infringe one or more claims of the '029 Patent, in violation of 35 U.S.C. § 271, by manufacturing, using, selling, offering for sale, and/or importing cell phones, digital cameras, tablet computers including, but not limited to, the following (collectively referred to as the "'029 Accused Devices"): *cell phones* such as the

Intensity II (SCH-U460) and the Galaxy S2 and S3; *tablet computers* such as the Galaxy Tab 7.0 and Tab 7.7 tablets, the Galaxy Tab 10.1 (GT-P7510) and Galaxy Tab 2 10.1 (GT-P51XX); *digital cameras* such as the Digimax S500 and S600, the DV150F, the DV300F, the EX2F, the Galaxy Camera, Galaxy Camera 2, and Galaxy NX Camera, the MV900 and MV900F digital cameras, the NV3, NV4, NV11, NV15, and NV40 digital cameras, the NX-5, NX-20, NX-30, NX-300, NX-1000, and NX-2000 digital cameras, the PL20, PL21, PL90, PL120, and PL121 digital cameras, the S85, S630, S730, S750, S760, S850, and S860 digital cameras, the ST72, ST150F, and ST151F digital cameras, the WB30F, the WB100, the WB150 and WB150F digital cameras, the WB200F, WB250, WB350, WB350F, WB800F, WB850, and WB2100 digital cameras; and any such reasonably similar products.

45. By way of example, the '029 Accused Devices include a processor electrically connected to a strobe, and an image sensor coupled to a memory, where a supplemental strobe duration stored in the memory is generated from a preparatory image received at the processor from the image sensor when the strobe is activated to generate a preparatory light for a preparatory duration. The processor of the '029 Accused Devices accesses a look-up table in the memory that stores image strobe durations and power values including a preparatory image strobe duration and an associated preparatory power value.

46. Defendants also indirectly infringe the '029 Patent by inducing infringement by others, such as manufacturers, resellers, and/or end-users of the '029 Accused Devices, of one or more claims of the '029 Patent in violation of 35 U.S.C. § 271. On information and belief, Defendants knew of the '029 Patent and knew of its infringement, including by way of this lawsuit and earlier. For example, Defendants knew of the '029 Patent at least as early as March 2013, when the U.S. Patent and Trademark Office identified the '029 Patent for Defendant SEC in an Office Action during prosecution of a Samsung patent application (U.S. Patent Application No. 12/731,244).

47. Defendants' affirmative acts of selling the '029 Accused Devices, causing the '029 Accused Devices to be manufactured and distributed, and providing instruction manuals for the '029 Accused Devices have induced and continue to induce Defendants' manufacturers, resellers, and/or end-users to make or use the '029 Accused Devices in their normal and customary way to infringe the '029 Patent. Defendants have specifically intended and were aware that these normal and customary activities would infringe the '029 Patent. Defendants performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '029 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.

48. Defendants further indirectly infringe the '029 Patent by manufacturing, using, selling, offering for sale, and/or importing the '029 Accused Devices to resellers and/or end-users with knowledge that the '029 Accused Devices were and are especially manufactured and/or especially adapted for use in an infringement of the '029 Patent, and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

49. The '029 Patent recites the invention of a circuit with the function of adjusting image lighting. Each of the '029 Accused Devices contains a processor and/or image sensor with a circuit that performs this function in the manner claimed in the '029 Patent. This circuit is integrated into the processor and/or image sensor, which is mounted directly onto a circuit board for use in the device. On information and belief, individual portions of the processor and/or image sensor are not designed to operate in isolation; they are designed to operate in unison. Accordingly, without this circuit or its function, the processor and/or image sensor would either not function or function in an unintended manner. From this, the most compelling inference that arises is the processor and/or image sensor has no substantial non-infringing uses, and that any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental. Defendants' manufacture, use, sale, offering for sale, and/or importation of the '029 Accused Devices to resellers and/or end-users constitutes contributory infringement of the '029 Patent.

50. On information and belief, including the allegations above showing knowledge and intent, Defendants' infringement has been and continues to be deliberate, willful, and in reckless disregard of Imperium's patent rights.

51. Imperium has been damaged and continues to be damaged by Defendants' infringement of the '029 Patent.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Imperium demands judgment against Defendants, including their affiliates, officers, agents, servants, employees, and all persons in active concert or participation with them, as follows:

A. An award to Plaintiff Imperium of such damages under 35 U.S.C. § 284 as proven against Defendants for infringement of the '884 Patent, '290 Patent, and '029 Patent, together with pre-judgment and post-judgment interest;

B. A permanent injunction prohibiting Defendants from further acts of infringement of the '884 Patent, '290 Patent, and '029 Patent;

C. A declaration that Defendants have willfully infringed the '884 Patent, '290 Patent, and '029 Patent;

D. An increase in the award of damages to Plaintiff Imperium up to three times the amount of its actual damages for Defendant's willful infringement, as authorized by 35 U.S.C. § 284;

E. An award to Plaintiff Imperium of the costs of this action and its reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

F. Such other and further relief as this Court may deem just and appropriate.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Imperium demands a trial by jury.

Date: June 9, 2014

Respectfully submitted,

/s/ Alan M. Fisch_____
Alan M. Fisch
FISCH SIGLER LLP
5335 Wisconsin Avenue NW
Eighth Floor
Washington, DC 20005-2030
(202) 362-3500 telephone
(202) 362-3501 facsimile
Email: alan.fisch@fischllp.com

*Attorney for Plaintiff Imperium IP Holdings (Cayman), Ltd.*