UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| IMPERIUM IP HOLDINGS (CAYMAN), LTD., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, SAMSUNG SEMICONDUCTOR, INC., SAMSUNG TECHWIN CO, LTD., AND SAMSUNG OPTO-ELECTRONICS AMERICA, INC. (D/B/A/ SAMSUNG TECHWIN AMERICA), <br><br> Defendants. | Case No. 4:14-cv-00371 (RC) (ALM) <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS SEC, SEA, STA, AND SSI'S RESPONSE TO IMPERIUM IP HOLDINGS (CAYMAN), LTD.'S MOTION FOR TRACK B CASE MANAGEMENT ASSIGNMENT**

Defendants Samsung Electronics Co., Ltd ("SEC"), Samsung Electronics America, Inc. ("SEA"), Samsung Telecommunications America, LLC ("STA"), and Samsung Semiconductor, Inc. ("SSI")[1] oppose Plaintiff Imperium IP Holdings (Cayman), Ltd.'s ("Imperium") Motion for Track B Management Assignment. D.I. 24 ("Mot.").

The rationale that Imperium offers for assignment of this case to "Track B" is not well grounded.[2] For example, Imperium alleges that this case involves "only one defendant" and the

---

[1] SEC, SEA, STA, and SSI are only four of the six defendants named by Imperium in this litigation. These four parties are represented by Ropes & Gray LLP. SEC, SEA, STA, and SSI understand that two other parties (Samsung Techwin Co., Ltd. and Samsung Opto-Electronics America, Inc.) are or will be represented by different counsel.

[2] Imperium's motion also suffers from procedural irregularities. Imperium states in its Certificate of Service that the motion was filed via the CM/ECF system, "which will send a notice of filing to all counsel of record who have consented to service by electronic means."

"same patent portfolio" as was at issue in a prior case. *See* Mot. at 1-2. But that is not accurate. This case involves six different, geographically dispersed defendants, some of which are represented by different counsel. This case also involves multiple patents that have never previously been litigated by ***any*** party (with only one patent overlapping with a prior case[3]), different theories of infringement and invalidity, and ***dozens*** of products that were not at issue in that prior case, which settled before trial. Accordingly, Imperium's Motion should be denied and this matter should be assigned to Track A. *See, e.g., E2E Processing Inc. v. Cabela's Inc.*, No. 14-cv-00036, slip op. at 1-2 (E.D. Tex. May 5, 2014) (denying plaintiff's motion for Track B proceedings where defendants strenuously objected and plaintiff failed to show that Track B "will provide any substantial benefit to the parties in this case.").

Track A has proven effective in achieving this Court's objective of providing predictability and structure to litigation. *See* General Order 14-3 at 1. The newly-created alternative Track B is "meant to complement the default procedures of Track A, by providing a choice" to the parties. *Id* at 1. That is why the use of the alternative Track B is authorized only upon election by agreement of all parties, or else by order of the Court. *Id.* at 2. Here, given the numerous parties, theories, and patents at issue, Imperium's motion for assignment to Track B would burden the defendants and would not promote judicial economy. *See E2E Processing*, slip op. at 2.

---

Mot. at 5. While that general statement is of course accurate, as of September 3, 2014, the date Imperium filed this motion, *no other counsel had entered an appearance*, so no counsel were served by ECF. As far as the undersigned counsel is aware, this Motion has never been served directly on SEC, SEA, STA, or SSI. Further, in its "Certificate of Conference" Imperium's counsel reports that Imperium's counsel spoke with Steven Pepe of Ropes & Gray (whom Imperium inaccurately suggests is counsel for all defendants). But Imperium did not provide Mr. Pepe with a copy of this motion, or even inform him that it had been filed, until September 8, 2014.

[3] *Imperium (IP) Holdings, Inc. v. Apple Inc.*, No. 4:11-cv-00163, 2014 WL 461775 (E.D. Tex. Jan 20, 2012) ("the 163 Case" or "163"). Defendants in the 163 Case included Apple, Motorola Mobility, Nokia, Kyocera, LG Electronics, and Sony Ericsson.

In its motion, Imperium pointed to supposed similarities between this case and the 163 Case. Imperium's arguments in that regard do not withstand scrutiny. For example:

**This case involves multiple different patents that were not litigated in 163 and, in fact, have never been litigated**. Imperium ambiguously argues that "the same patent portfolio" is asserted in this case as was asserted in the 163 case, and that the Court is "already acquainted with" the "infringement theories" and the "patented technology." Mot. at 1. But while Imperium asserted five patents in the 163 Case,[4] and is asserting three patents in this case,[5] only one patent in this so-called portfolio -- the '884 patent -- is common to the two litigations. The other two patents that Imperium now asserts against SEA, STA, SSI, and SEA -- i.e. the '290 and '029 patents -- have never been previously litigated against anyone. Moreover, the '290 and '029 patents are not in any way related to the '884 patent, or any of the other patents asserted in the 163 Case. Neither the Court nor any of the defendants is familiar with *any* of the infringement theories that Imperium asserts for at least the '290 and '029 patents, or with the technologies ostensibly protected by those patents.

Further complicating matters in this litigation, there are different accused products for the three asserted patents. For example, Imperium accuses laptop computers, including the Samsung Series 3, 5, 6, 7, and 9, of infringing the '884 patent, but these laptop products are not accused of infringing the '290 or '029 patents. *See* D.I. 1 ¶¶ 21, 32, 44. Likewise, Imperium accuses digital cameras (including the Digimax S500 and Digimax S600) of infringing the '029 patent, but these digital cameras are not accused of infringing the '884 or '290 patents. *Id.* Plainly, the infringement theories and patented technologies for each of the three asserted patents in this case are markedly different from each other.

---

[4] U.S. Patent Nos. 6,271,884; 6,838,651; 6,838,715; 7,064,768; and 7,109,535.

[5] U.S. Patent Nos. 6,271,884; 6,836,290; and 7,092,029.

**The 163 claim construction order says nothing about the '029 patent or the '290 patent, and may not be relevant even to the '884 patent.** Imperium suggests that the claim construction order entered in the 163 Case is relevant to determining whether this case should proceed on Track B. *See* Mot. at 1, 1 n.2. That is incorrect. Any claim construction order entered in the 163 Case is not legally binding with respect to the patents asserted here -- even with regard to the '884 patent that was at issue in the 163 Case. *Texas Instruments, Inc. v. Linear Technologies Corp.*, 182 F. Supp. 2d 580, 589 (E.D. Tex. 2002) (court holding that it was not bound by its own claim construction decision in a second patent infringement case involving identical patents but different defendants). And, in any event, it is likely that the parties will disagree about the construction of different claim terms than those that were litigated in the 163 Case. In addition, neither the '029 patent nor the '290 patent was asserted in the 163 Case; accordingly, the order has no bearing on those patents. *Cf. Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1318–19 (Fed. Cir. 2005) (courts are not bound by prior constructions rendered even for similar or identical terms in separate patents).

**This case involves numerous defendants which were not parties in the 163 Case.** Imperium alleges that the 163 Case involved seven defendants, while this case "involves only one defendant," and, as such, this case should be "a more straightforward, streamlined litigation" than 163. Mot. at 1-2. But Imperium has, in reality, sued *six* separate defendants in this action. Those six defendants are represented by different counsel,[6] presumably sell different products (which may be relevant to different patents), and operate in disparate geographic regions across the United States and indeed the world. *See* D.I. 1 ¶¶ 2-7, 10-15. Coordination between multiple defendants represented by different counsel and accused of infringement across multiple patents

---

[6] *See supra* n.1.

and multiple accused products requires time that is simply not afforded under the accelerated timeline of Track B.

**This case involves at least dozens and possibly hundreds of products that were not accused or at issue in the 163 Case.** Imperium asserts that the Court "is already acquainted with the . . . accused products." Mot. at 1. Imperium's argument, however, appears to be based solely on the assertion that "the same types of consumer goods," including "mobile phones, cameras, computers, and tablets," as were at issue in the 163 Case are at issue in this case. *See id*. In fact, *none* of Defendants' devices was among the accused products in the 163 Case. All "mobile phones, cameras, computers, and tablets" are simply not the same. In its Complaint, Imperium mentions *dozens* of individual product names, and -- given that each Samsung product name (such as the "Galaxy S3") can implicate numerous product models -- Imperium's allegations may actually be directed to *hundreds* of accused products.

**Discovery disputes between different parties in a different case are entirely irrelevant to this case.** Imperium argues that the "resolution of the discovery disputes" in the 163 Case "provides a useful window into" discovery disputes that may arise in this case. Mot. at 1. But the resolution of discovery disputes between different parties, in a different case, involving both different patents and different products, has nothing to do with different discovery disputes that might arise in *this* case. And there is simply no reason to think that an accelerated schedule will help to avoid or resolve any such potential disputes.

**There is no evidence that SEC, SEA, SSI, and STA "knew of" the patents prior to the filing of the Complaint.** Imperium argues that all of the defendants have "had ample time to

5

prepare [their] defenses" because they supposedly "knew of" the patents prior to the filing of the lawsuit. But Imperium's assertion is factually and legally flawed.[7]

Imperium asserts that Samsung knew of the '290 and '092 patents when Samsung first identified the patents to the USPTO.[8] Mot. at 2. But it is fatuous to argue that "knowledge" of potential infringement allegations is imputed to a defendant simply because the defendant had cited to a patent during prosecution of its own patents. *See* C*reative Pioneer Prods. Corp. v. K Mart Corp.*, No. H-83-4137, 1987 WL 54482 (S.D. Tex. July 10, 1987) (declining to find that defendant had notice of the asserted patent, even though defendant had become aware of the patent through its own initiative). Instead, the patent holder must meet the notice requirement of 35 U.S.C. § 287. *See Devices for Medicine, Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987) ("Absent notice, [an infringer's actual] knowledge of the patent is irrelevant."). And that notice requirement was not satisfied until Imperium -- which did not name SEC, STA, SEA, or the other defendants as parties in the 163 Case -- communicated its infringement allegations to the defendants in this case. *See Amsted Industries Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device. . . . The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer.").

---

[7]   Imperium also suggests that SEC, STA, SSI, and SEA would not be prejudiced by Track B because defendants asked for and received an extension of time to respond to the Complaint. In fact, Imperium itself moved for that extension on behalf of all defendants. *See* D.I. 22. And the Court granted that motion, extending the time to respond to the Complaint to September 22, 2014. *See* D.I. 23. Such brief extensions to answer are common, and do not change the fact that, in the view of SEC, STA, SSI, and SEA, this case should appropriately proceed along Track A.

[8]   By "Samsung," Imperium is apparently referring only to SEC. *See* Mot. at 2 n.7, 8; D.I. 1 ¶¶ 35, 46.

Imperium's "knowledge" argument with respect to the '884 patent is different, but still misses the mark. Imperium alleges that Samsung knew of the '884 patent and "Imperium's infringement positions" because Samsung "provided the image sensors to several of the defendants" in 163 and "participated in that case as a third-party." Mot. at 2. But in its Complaint, Imperium alleges that only one of the defendants -- SSI -- provided these image sensors[9] and "participated in [163] as a third party." *See* Mot. at 2 n.6; D.I. 1 ¶ 23. Notably, Imperium does not allege that Imperium gave SSI notice of alleged infringement *by SSI* of the '884 patent. *See Amsted*, 24 F.3d at 187 ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device.") Regardless, Imperium has not alleged that SEC, STA, or SEA was aware of the '884 patent prior to the Complaint. Moreover, SSI did not enter an appearance in the 163 Case, and so (contrary to Imperium's claim) did not "participate" in that case.

\*                    \*                    \*

Contrary to Imperium's assertions, this case involves multiple defendants represented by different attorneys, multiple patents that have never previously been litigated by ***any*** party, different theories of infringement and invalidity than have ever been raised or tested in court, and dozens if not hundreds of products that were not at issue in the one prior case to which Imperium points. Given the numerous novel parties, patents, and products at issue, SEC, SEA, SSI, and STA submit that a traditional "Track A" schedule would best provide predictability and structure to this litigation.

Accordingly, SEC, SEA, SSI, and STA respectfully request that this Court deny Imperium's motion to enter the Track B Management Order.

---

[9] Notably, Imperium does not even allege that the image sensors it claims (without support) SSI provided to "several of the defendants" in the 163 Case are accused components with regard to the '884 patent.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: September 22, 2014 | By: *Jesse J. Jenner, with permission by* *Mich*ael E. Jones |

        Jesse J. Jenner (Lead Attorney)
        Christopher Harnett (admission pending)
        Steven Pepe (admission pending)
        Steven M. Balcof
        Ropes & Gray LLP
        1211 Avenue of the Americas
        New York, NY 10036
        Telephone: (212) 596-9000
        Facsimile: (212) 596-9090
        *jesse.jenner@ropesgray.com*
        *christopher.harnett@ropesgray.com*
        *steven.pepe@ropesgray.com*
        *steven.balcof@ropesgray.com*

        Samuel L. Brenner
        Scott S. Taylor
        Ropes & Gray LLP
        Prudential Tower
        800 Boylston Street
        Boston, MA 02199
        Telephone: (617) 951-7000
        *samuel.brenner@ropesgray.com*
        *scott.taylor@ropesgray.com*

        Michael E. Jones
        SBN: 10929400
        Potter Minton, PC
        110 N. College, Suite 500
        Tyler, Texas 75702
        Telephone: (903) 597-8311
        Facsimile: (903) 593-0846
        *mikejones@potterminton.com*

        *Attorneys for Defendants Samsung Electronics Co., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC, and Samsung Semiconductor, Inc.*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 22, 2014.

                                                                                */s/ Michael E. Jones*