## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| IMPERIUM IP HOLDINGS (CAYMAN), LTD., | ) ) |
| Plaintiff and Counterclaim Defendant, | ) ) Case No. 4:14-cv-00371 (RC)(ALM) |
| v. | ) ) |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, AND SAMSUNG SEMICONDUCTOR, INC. | ) ) ) **JURY TRIAL DEMANED** ) ) ) |
| Defendants and Counterclaim Plaintiffs. | ) ) |

**SAMSUNG'S SUR-REPLY IN OPPOSITION TO IMPERIUM'S
MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS**

The critical premise of Imperium's motion is that the identity of the image sensor in the Galaxy Note ("Note 1") was not publicly available at the time Imperium filed suit. As Samsung demonstrated in its Response, that critical premise is false. So Imperium now suggests that this publicly available information was not "*reasonably discoverable* without already knowing the name of the sensor used by the Note 1." (Imp. Reply at 2.)[1] But this too is not correct. As demonstrated below, Imperium could have easily identified both the image sensor and image processor used in the Note 1 without already knowing their names, S5K5BAF and M5MO, respectively.

I.  **IMPERIUM DID NOT EXERCISE PRE-CONTENTION DILIGENCE**

Samsung demonstrated in its Response that, years before Imperium filed its Complaint, numerous web sites had publicly identified both the image sensor and image sensor processor used in the Note 1. (Resp. at 5-7.) Imperium now argues that "such websites were not reasonably discoverable without already knowing the name of the sensor used by the Note 1." (Imp. Reply at 1, 2.) But that is simply not the case.

As an initial matter, that Imperium accused *over eighty* products without identifying image sensors shows that it could have (and should have) accused the Note 1 without identifying the particular image sensor. (Resp. at 6–7.) Imperium's Reply, in fact, concedes that some products "may be accused of infringement based on information independent of the identity and operation of the image sensor." (Imp. Reply at n.6.)

Imperium, nevertheless, provides selected examples of what it claims to be "reasonable" Google searches in which the websites identified in Samsung's Response do not appear in the first 100 hits. (Imp. Reply at 1, n.2; *see also id.* at Exs. 1–4.) But these contrived hypothetical

---

[1] Unless otherwise indicated, all emphasis is added.

searches are *un*reasonable. As but two examples, all of Imperium's searches use the general phrase "Galaxy Note" within the search string, and are unrestricted by date. But Imperium knows very well that, after the original Galaxy Note, Samsung produced successor products such as the Galaxy Note 2, Galaxy Note 3, Galaxy Note 4, and Galaxy Note 5. Thus, Imperium's hypothetical searches are designed to be overbroad and identify products other than the original Note 1. Indeed, most of Imperium's search results relate to those other products.[2] (*See* Imp. Reply at Exs. 1–4.)

Imperium knows that a *reasonable* search would focus specifically on the Note 1. Imperium also knows that Samsung products are publicly identified by specific model number -- in the case of the Note 1, "GT-N7000".[3] Notably, the Engadget "Behind the Glass" article identified in Samsung's Response is only the *fifth* hit with a search for "'GT-N7000' 'front camera' 'rear camera' sensor". (Ex. A.)[4] There are numerous additional examples.[5] Moreover, these searches yield *still additional* public websites identifying the name of the image sensor and image processor beyond the sampling of sites identified in Samsung's Response.[6] Thus, a proper search readily would have yielded the name of the image sensor used by the Note 1.

---

[2] Taking Imperium's exemplary search string "samsung 'galaxy note' camera sensor cmos" as an example, no more than a small handful of the first 100 search hits appear to have any bearing on the Note 1. (*See* Imp. Reply at Ex. 1.)

[3] *See, e.g.,* https://en.wikipedia.org/wiki/Samsung_Galaxy_Note_(original). GT-N7000 corresponds to the international version of the Note 1, released in October 2011. *See, e.g.,* http://www.gsmarena.com/samsung_galaxy_note_n7000-4135.php.

[4] *See also* Ex. B (search for "'GT-N7000' 'front camera' sensor" returning the Engadget website on the third page of results); Ex. C (for search of "'GT-N7000' 'rear camera' sensor" with Engadget website on first page of results).

[5] *E.g.* Ex. D (a search for "'GT-N7000' 'front camera' 'rear camera' inside" yielding the Engadget website and Samsung marketing presentation (*see* Resp. at 6) in the first page of search results); Ex. E (a search for "'GT-N7000' 'image processor' sensor" yielding the Engadget, Hotterthanteh, and Techgran websites in the first page of results (*see* Resp. at 5)).

[6] *See, e.g.*, Exs. E, J (http://www.yogaretnam.com/gadgets/samsung-galaxy-note-gets-dissected).

Alternatively, had Imperium limited its search to a time period relevant to just the Note 1, it would similarly have easily found the information its claims was not publicly available. For example, the Engadget "Behind the Glass" article is on the first page of results when searching "'galaxy note' image sensor" and limiting results to those appearing before January 1, 2012 (the Note 1 was released in October 2011). (Ex. F.) Further, the search "'galaxy note' camera sensor" with the same date limitation brings up a website stating that the Note 1 "boasts of the exact same camera sensor as the Galaxy S2." (Exs. G, H.) (Imperium's original contentions had already identified the S5K5BAF image sensor as being used in in the Galaxy S2. (Ex. I).)[7]

## II. IMPERIUM DID NOT EXERCISE POST-CONTENTION DILIGENCE

In presenting the argument that it exercised post-contention diligence, Imperium focuses on Samsung's provision of additional information about the Note 1 image sensors in Samsung's April 24 supplemental interrogatory responses. (Imp. Reply at 3.) Imperium states that it "*had to investigate infringement* based on the new image sensor numbers that Samsung identified." (*Id.*) But Imperium's "investigation" apparently changed nothing. For each asserted patent, Imperium has provided Samsung with one proposed infringement chart for the Note 1 naming the S5K5BAFX image sensor (identified in Samsung's March 9, 2015 interrogatory response), and one chart naming the S5K5BAFX03 image sensor (identified in Samsung's April 24, 2014 supplement). But the two charts are nearly identical -- and both cite *only* to the S5K5BAF image sensor datasheet. Samsung's April 24 appendage of the "03" to the image sensor number had *no* effect on Imperium's contentions. Thus, Imperium's argument that it needed weeks to

---

[7] Imperium attempts to distinguish *EMG Tech. v. Chrysler Group*, No. 6:12-cv-259, 2013 U.S. Dist. LEXIS 189413 (E.D. Tex. July 3, 2013) on the basis that the plaintiff was in possession of the publicly-available information it wished to rely upon in its amended infringement contentions. (Imp. Reply at 2–3.) But even if Imperium is reading this case correctly, Imperium fails to explain how information it *should* have possessed is materially different from the situation in *EMG Tech.* where the information was possessed but not appreciated.

investigate the infringement claim is specious at best.[8]

### III. SAMSUNG IS PREJUDICED BY IMPERIUM'S DELAY

As Samsung discussed in its Response, Imperium's delay has resulted in prejudice. (Resp. at 8–10.) Imperium's argument that "nothing prevented Samsung from preparing its witnesses to testify about the Note 1 or producing other discovery on the Note 1" (Imp. Reply at 4) does not change that fact. Here the very prejudice Samsung seeks to escape—significant discovery costs—is what prevented Samsung from expending resources on the burdensome steps of collecting and reviewing documents and source code for the Note 1, or preparing its witnesses to testify on *yet another* product in addition to the many dozens of accused products.[9]

Imperium suggests that Samsung's June 24 proposal to allow mutual amendments to the

---

[8] The cases upon which Imperium relies for support are unavailing. *See* Imp. Reply at n.7. In several of the cited cases, the plaintiff notified the defendant of its intent to amend contentions and moved the court for leave to do so within weeks or soon after obtaining relevant discovery. *See Nidec Corp. v. LG Innotek Co.*, No. 6:07-cv-00108-LED-JDL, 2009 U.S. Dist. LEXIS 106667, at *5-6 (E.D. Tex. Sep. 2, 2009); *Motion Games, LLC v. Nintendo Co.,* No. 6:12-cv-00878-RWS-JDL, 2015 U.S. Dist. LEXIS 50511, at *8-10 (E.D. Tex. Apr. 16, 2015); *Mondis Tech., Ltd. v. LG Elecs., Inc.,* No. 2:07-cv-00565-TJW-CEC, 2011 U.S. Dist. LEXIS 48376, at *11 (E.D. Tex. May 5, 2011). As Samsung previously noted, and unlike these cases, here Imperium waited over two months to notify Samsung of its intent to amend, and over four months before filing the instant motion. (Resp. at 8.) In other cited cases with a longer delay, mitigating circumstances were at play that are not present here. *See Datatreasury Corp. v. Wells Fargo & Co.,* No. 2:06-cv-00072-DF, 2010 U.S. Dist. LEXIS 144906, at *29-30 (E.D. Tex. Jan. 19, 2010) (four month delay in accusing new instrumentalities after discovery on those instrumentalities did not preclude amendment when plaintiff "began seeking agreement" from defendant one month after discovery); *MacLean-Fogg Co. v. Eaton Corp.,* No. 2:07-cv-00472, 2008 U.S. Dist. LEXIS 78301, at *4-5 (E.D. Tex. Oct. 6, 2008) (three month delay between obtaining relevant discovery and notifying defendant of intent to amend contentions did not preclude amendment when plaintiff's delay "resulted principally from requesting additional discovery" in the interim "in furtherance of its attempt to supplement.").

[9] Likewise, Samsung's prejudice also is not changed by Imperium's suggestion that "Samsung's prior knowledge of Imperium's request to amend diminishes the likelihood of prejudice." (Imp. Reply at 4.) And the *Alt v. Medtronic* case cited by Imperium is unavailing. In *Alt*, the plaintiff was made aware of defendant's intent to amend invalidity contentions, but did not object, choosing instead to "lay behind the log." *Alt v. Medtronic,* No. 2:04-cv-00370, 2006 U.S. Dist. LEXIS 4435, at *15 (E.D. Tex. Feb. 1, 2006). This is not the case here.

parties' respective invalidity and infringement contentions somehow "wholly undermines" Samsung's argument that it would be suffer prejudice if this motion is granted. (Imp. Reply at 4.) Imperium is incorrect. An offer of such a quid pro quo is not unusual in litigation and demonstrates that Samsung was willing to shoulder the significant costs in providing discovery on the Note 1 in return for Imperium's agreement to allow amended invalidity contentions, and avoid motion practice. Moreover, Samsung's proposal was made over seven weeks ago and prior to any depositions.[10] Had Imperium accepted Samsung's June 24 offer, Samsung would have had sufficient time to gather relevant information, as well as prepare witnesses, on the Note 1. Now, all of Samsung's technical witnesses have testified, and Samsung's technical document production is nearly complete. (Resp. at 9, n.6).

## IV. CONCLUSION

Samsung respectfully requests that the Court deny Imperium's motion to the extent Imperium seeks to amend its contentions to include the Note 1.

---

[10] Samsung made an initial proposal on June 16 that would have allowed Imperium to add dozens of new products to its contentions. (*See* Imp. Reply, Ex. 4 at 2–3.) Imperium instead narrowed its proposed new products to the Note 1, Galaxy S6 and Galaxy S6 Edge. Samsung's June 24 proposal pertained to the Note 1, as it did not oppose the S6 or S6 Edge. (*Id.* at 1.)

Dated: August 14, 2015 By: */s/ Steven Pepe, with permission by John F. Bufe*
Jesse J. Jenner
Christopher Harnett
Steven Pepe
Steven M. Balcof
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
*jesse.jenner@ropesgray.com*
*christopher.harnett@ropesgray.com*
*steven.pepe@ropesgray.com*
*steven.balcof@ropesgray.com*

Samuel L. Brenner
Scott S. Taylor
Ropes & Gray LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000
*samuel.brenner@ropesgray.com*
*scott.taylor@ropesgray.com*

Michael E. Jones
John F. Bufe
Allen F. Gardner
SBN: 10929400
Potter Minton, PC
110 N. College, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846
*mikejones@potterminton.com*
*johnbufe@potterminton.com*
*allengardner@potterminton.com*

*Attorneys for Defendants Samsung Electronics Co., Samsung Electronics America, Inc., and Samsung Semiconductor, Inc.*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 14, 2015.

                                      */s/ John F. Bufe*