## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IMPERIUM IP HOLDINGS (CAYMAN), LTD., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 4:14-cv-00371-ALM |
| SAMSUNG ELECTRONICS CO., LTD., et al., | § § § | |
| Defendants. | § § § § § | |

## IMPERIUM'S PROPOSED JURY INSTRUCTIONS

Plaintiff Imperium respectfully submits the following proposed preliminary and specific jury instructions.  Attached as Exhibit A hereto is Imperium's proposed jury verdict form.

On January 8, 2016, Imperium provided Samsung with drafts of proposed instructions and a verdict form, as previously agreed by the parties.  Imperium has not yet received a substantive response from Samsung, and the parties agreed to submit separate proposals at this time.  The parties have also agreed to continue to meet and confer regarding these materials in an effort to reach consensus, and intend to submit a joint set of proposed instructions that includes areas of agreement and disagreement ahead of the pretrial conference.

Imperium reserves the right to amend or supplement its proposed instructions and verdict form as the case progresses.  Imperium does not waive any objections to these instructions.

# PART 1
# PRELIMINARY INSTRUCTIONS

## 1.1    PRELIMINARY INSTRUCTIONS—GENERAL

Members of the jury, you have previously been sworn as the jury to try this case.  As the jury, you will decide the disputed questions of fact.  As the judge, I will decide all questions of law and procedure.  From time to time, during the trial, and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Authority: Preliminary jury instructions given in the invalidity phase of *Alexsam, Inc. v. Best Buy Stores, LP, et al.,* case no. 2:13-cv-00002 (E.D. Tex. Apr. 29, 2013); preliminary jury instructions given in *Alexsam v. Pier 1 Imports, Inc.,* case no. 2:08-cv-00015 (E.D. Tex. Oct. 17, 2011); preliminary jury instructions given in *Retractable Technologies Inc., et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 2, 2009).

**1.2    PRELIMINARY INSTRUCTIONS—PATENT SPECIFIC—WHAT A PATENT IS AND HOW ONE IS OBTAINED**

This case involves a dispute relating to three United States patents.  Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

The United States Constitution grants Congress the powers to enact laws, "to promote the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."  With this power Congress enacted the patent laws.  Patents are granted by the United States Patent and Trademark Office, and sometimes the lawyers in the court will refer to that as the PTO or the Patent Office.

The process of obtaining a patent is called patent prosecution.  A United States patent gives a patent owner the right for up to 20 years from the date the application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission.  A violation of the patent owner's rights is called infringement.  The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent, one must file an application with the PTO.  The PTO is an agency of the federal government that employs trained examiners who review applications for patents.  The application includes what is called a specification, which must contain a written description of the claimed invention describing what the invention is, how it works, how to make it, and how to use it so others skilled in the field will know how to make and use it.  The specification concludes with one or more numbered sentences.  These are called the patent claims.

When the patent is eventually granted by the PTO, the claims at the end of the patent define the boundaries of its protection.  After the applicant files a patent application, a PTO patent

examiner reviews the patent application to determine whether the claims are patentable.   In examining a patent application, the patent examiner reviews the records available to the PTO for what is referred to as prior art.  The examiner also will review prior art if it is submitted to the PTO by the applicant.

Prior art is defined by law.  In general, however, prior art includes things that existed before the claimed invention that were publicly known or used in a publicly accessible way in this country or that were patented or described in a publication in any country.  The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art.  A patent lists the prior art that the examiner considered.  This list is called the list of cited references.

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be allowed.  This writing from the patent examiner is called an office action.  If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims.

This process, which takes place between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and the claims therein meet the requirements for a patent.   The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the prosecution history.  All of this material becomes available to the public no later than the date when the patent issues.

Authority: *Alexsam, Inc. v. Best Buy Stores, LP, et al.,* case no. 2:13-cv-00002 (E.D. Tex. Apr. 29, 2013); *Alexsam v. Pier I Imports, Inc.,* case no. 2:08-cv-00015 (E.D. Tex. Oct. 17, 2011);

*Retractable Technologies Inc., et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 2, 2009); Federal Circuit Bar Association Model Patent Jury Instructions, A.1.

## 1.3    THE PATENT INVOLVED IN THIS CASE

I want to talk about the three patents that are at issue in this case.  To help you follow the evidence, you have been given notebooks.  In them you have copies of the patents, a glossary of patent terms, and a glossary of the terms that the Court was called on to construe or interpret that are contained in the patents.

You will find that the cover page of each patent provides identifying information, including the date that the patent is issued and the patent number along the top.  You will see the inventor's name, the filing date, and a list of the cited references considered by the PTO.

The specification of the patents begins with the abstract, also found on the cover page.  The abstract is a brief statement about the subject matter of the invention.

Next are the drawings, which illustrate various aspects or features of the inventions.

The written description appears next and is organized into two columns on each page.  The specification ends with numbered sentences.  These are the patent claims.  The patent claims determine the scope of the invention.

Authority: Preliminary jury instructions given in the invalidity phase of *Alexsam, Inc. v. Best Buy Stores, LP, et al.,* case no. 2:13-cv-00002 (E.D. Tex. Apr. 29, 2013); preliminary jury instructions given in *Alexsam v. Pier I Imports, Inc.,* case no. 2:08-cv-00015 (E.D. Tex. Oct. 17, 2011).

## 1.4      THE CONTENTIONS OF THE PARTIES

To help you follow the evidence, I will now give you a summary of the contentions of the parties.

The plaintiff in this case is Imperium IP Holdings (Cayman), Ltd., who from time to time may be referred to simply as Plaintiff or Imperium.  The defendants in this case are Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC, and Samsung Semiconductor, Inc., who from time to time may be referred to simply as the Defendants or Samsung.

The patents involved in this case are United States Patent No. 6,271,884, which will be referred to in shorthand as the '884 patent; United States Patent No. 6,836,290, which will be referred to in shorthand as the '290 patent; and United States Patent No. 7,092,029, which will be referred to in shorthand as the '029 patent.  These patents may also be referred to as the asserted patents, the patents at issue, or the patents-in-suit.

The patent claims at issue in the '884 patent are the following: claims 1, 5, 6, 14, 17, 18, and 19.  The patent claims at issue in the '290 patent are the following: claims 1 and 10.  The patent claims at issue in the '029 patent are the following: claims 1, 6, and 7.

Imperium asserts that Samsung infringes claims 1, 5, 6, 14, 17, 18, and 19 of the '884 patent, claims 1 and 10 of the '290 patent, and claims 1, 6, and 7 of the '029 patent.  Imperium seeks damages from Samsung for allegedly infringing the patents at issue. And Imperium asserts Samsung knowingly and willfully infringed one or more of these three patents.

Samsung denies that it has infringed, or infringes, the asserted claims of the patents-in-suit. Samsung alleges that the asserted claims are invalid.  Samsung further alleges that Imperium is barred in whole or in part from recovering damages under a defense it must prove called laches.

Those are the positions of the parties that are here before you today.  Your job is going to be to decide which, if any, of claims 1, 5, 6, 14, 17, 18, and 19 of the '884 patent, claims 1 and 10 of the '290 patent, and claims 1, 6, and 7 of the '029 patent have been infringed, and which, if any, of these claims are invalid.  If you decide that any of the claims are infringed and not invalid, then you must consider Samsung's laches defense and determine any money damages that should be awarded to Imperium to compensate it for any infringement that you found.

It is my job as the judge to determine the meaning of any claim language from these patents that needs interpretation.  You must accept the meanings that I give you and use them when you decide whether any claim is infringed.  In your notebook, you have been provided with a copy of the meanings that I have adopted for certain claim terms.

Authority: Preliminary jury instructions given in the invalidity phase of *Alexsam, Inc. v. Best Buy Stores, LP, et al.,* case no. 2:13-cv-00002 (E.D. Tex. Apr. 29, 2013); preliminary jury instructions given in *Alexsam v. Pier I Imports, Inc.,* case no. 2:08-cv-00015 (E.D. Tex. Oct. 17, 2011); preliminary jury instructions given in *Retractable Technologies Inc., et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 2, 2009).

**1.5    ORDER OF TRIAL**

I am going to give you a brief outline of the trial.  The lawyers for the parties will begin by making what is called an opening statement.  Opening statements are intended to assist you in understanding the evidence.  What the lawyers say is not evidence.

After the opening statements, the parties will present their evidence.  After all of the evidence is presented, I will instruct you on the applicable law.  Then the lawyers will again address you to make closing arguments.

Keep an open mind during the trial.  Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.


Authority: Preliminary jury instructions given in the invalidity phase of *Alexsam, Inc. v. Best Buy Stores, LP, et al.,* case no. 2:13-cv-00002 (E.D. Tex. Apr. 29, 2013); preliminary jury instructions given in *Alexsam v. Pier I Imports, Inc.,* case no. 2:08-cv-00015 (E.D. Tex. Oct. 17, 2011).

## 1.6    JURY CONDUCT

I need to say a few words about your conduct as jurors.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss the case in your presence.  Do not discuss the case even with other jurors until all the jurors are in the jury room actually deliberating at the end of the case.  Until then, keep an open mind.

If anyone should attempt to discuss the case or approach you concerning the case, you should inform the Court immediately through our courtroom marshal.

Hold yourself completely apart from the people involved in the case, the parties, the witnesses, the attorneys, and all persons associated with them.

Many of you have smartphones, Internet access, and other technology tools.  You must not use these tools to communicate with anyone about the case.  This includes your family and friends.

This also means if you use a social media website such as Facebook, LinkedIn, Twitter, YouTube, or any blog or website, you should not discuss or even mention this case at all on those sites.  Do not post updates about what is going on in the case.

It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case.  You are to be guided solely by what you see and hear in this trial.

Do not seek to learn anything about the case from any other source.  In particular, you should not read any newspaper accounts of the trial or listen to any radio or television newscasts concerning it.  You should not search the Internet to find out more information about the case, the parties, or the attorneys in the case.

Do not consult dictionaries or reference materials, or any websites, blogs, Google, Bing, Yahoo, or any other electronic tools about this case or anything relating to it.

If during the trial you need to communicate with me, simply hand a signed note to the marshal and he will give it to me.

Authority: Preliminary jury instructions given in the invalidity phase of *Alexsam, Inc. v. Best Buy Stores, LP, et al.,* case no. 2:13-cv-00002 (E.D. Tex. Apr. 29, 2013); preliminary jury instructions given in *Alexsam v. Pier 1 Imports, Inc.,* case no. 2:08-cv-00015 (E.D. Tex. Oct. 17, 2011); preliminary jury instructions given in *Retractable Technologies Inc., et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 2, 2009).

## 1.7   PROCEEDINGS OUT OF THE JURY'S EARSHOT

During the trial it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence.  I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.

Authority: Preliminary jury instructions given in the invalidity phase of *Alexsam, Inc. v. Best Buy Stores, LP, et al.,* case no. 2:13-cv-00002 (E.D. Tex. Apr. 29, 2013); preliminary jury instructions given in *Alexsam v. Pier I Imports, Inc.,* case no. 2:08-cv-00015 (E.D. Tex. Oct. 17, 2011).

**1.8    NOTE TAKING—PERMITTED**

Pay close attention to the testimony and the evidence.  If you would like to take notes during the trial, you may do so.  If you do take notes, be careful not to get so involved in note taking that you become distracted and miss part of the testimony.

Your notes are to be used only as aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes.

If you do not take notes, rely on your own independent memory of the testimony.  Do not be unduly influenced by the notes of other jurors.  A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.

Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations.  On the other hand, any exhibits will be available to you during your deliberations.

I have assigned certain numbers to the trial exhibits.  You should not construe any significance to the exhibit numbers.  You will not be provided with all the exhibits when you retire to the jury room to deliberate, but any specific exhibit you request during your deliberation will be provided to you during the trial.  If you find any exhibit of particular importance, you should take note of the exhibit number for later reference.

Authority: Preliminary jury instructions given in the invalidity phase of *Alexsam, Inc. v. Best Buy Stores, LP, et al.,* case no. 2:13-cv-00002 (E.D. Tex. Apr. 29, 2013); jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013); preliminary jury instructions given in *Alexsam v. Pier I Imports, Inc.,* case no. 2:08-cv-00015 (E.D. Tex. Oct. 17, 2011).

**1.9     EVIDENCE IN THE CASE**

Let's talk about what you can consider, what is evidence and what is not.  The evidence that you are to consider in deciding the facts consists of:

(1) the sworn testimony of any witness;

(2) the exhibits that are received into evidence; and

(3) any facts to which the lawyers stipulate.

A stipulation occurs when the lawyers for both parties agree that a certain fact has been established.  You need to accept that fact as having been established when the lawyers stipulate to it.

Certain exhibits shown to you are illustrations.  We call these types of exhibits "demonstrative exhibits."  Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial.  If your recollection of the evidence differs from the exhibit, rely on your recollection.  While demonstrative exhibits may have been helpful to you in determining the issues, the demonstrative exhibits of both parties are not evidence or proof of any facts.  If they do not correctly reflect the evidence in this case, you should disregard these demonstrative exhibits and determine the facts from the underlying evidence.  Demonstrative exhibits are not admitted into evidence and will not be available to your during your deliberations.

Now, what is not evidence?  The following things are not evidence, and you must not consider them as evidence in deciding the facts of this case:

First, the statements and arguments of the attorneys are not evidence.

Second, the questions and objections of the attorneys are not evidence.  In other words, the language of their objections and their questions themselves are not evidence.

Third, any testimony that I instruct you to disregard will not be in evidence and you must disregard it.

Finally, anything you may see or hear when the Court is not in session, even if what you see or hear is done or said by one of the parties or by one of the witnesses.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218.; preliminary jury instructions given in *Retractable Technologies Inc., et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 2, 2009).

**1.10    DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.

Circumstantial evidence, or indirect evidence, is proof of one or more facts from which you could find another fact.

Now I will give you an example of direct and circumstantial evidence. Suppose that one party is trying to prove that it rained last night. A witness testifies that she went outside last night, saw the rain falling, felt it strike her face, and heard it splash on the concrete. That witness's testimony would be direct evidence that it rained last night. A second witness testifies that when he went outside yesterday afternoon, the ground was dry, but when he woke up and went outside this morning, the ground was wet and muddy. That witness did not observe rain directly. Nevertheless, because a reasonable inference that it rained would flow naturally from the observation that the ground was wet this morning when it was dry yesterday afternoon, that witness's testimony would constitute circumstantial evidence that it rained last night.

You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give any evidence.

Authority: Preliminary jury instructions given in the invalidity phase of *Alexsam, Inc. v. Best Buy Stores, LP, et al.,* case no. 2:13-cv-00002 (E.D. Tex. Apr. 29, 2013); preliminary jury instructions given in *Alexsam v. Pier I Imports, Inc.,* case no. 2:08-cv-00015 (E.D. Tex. Oct. 17, 2011); preliminary jury instructions given in *Retractable Technologies Inc., et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 2, 2009).

## 1.11   CREDIBILITY OF WITNESSES

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony.  An important part of your job will be making judgments about the testimony of the witnesses, including Plaintiff's and Defendants' representatives, who testified in this case.  You should decide whether you believe all or any part of what each person had to say, and how important that testimony was.

In making that decision I suggest that you ask yourself a few questions: Did the person impress you as honest?  Did the witness have any particular reason not to tell the truth?  What was the witness's appearance, attitude, or demeanor?  Did the witness's attitude or demeanor change while the witness was testifying?  Did the witness have a personal interest, such as financial interest or continued employment or business, in the outcome of the case?  Did the witness have any relationship with one of the parties, such as being employed by an entity indemnifying one of the parties?  Did the witness seem to have a good memory?  Did the witness clearly see or hear the things about which he or she testified?  Did the witness have the opportunity and ability to understand the questions clearly and answer them directly?  Did the witness's testimony differ from the testimony of other witnesses?  These are a few of the considerations that will help you determine the accuracy of what each witness said.  These considerations apply equally whether the witness testifies live from the witness stand or by videotaped deposition.

The testimony of the parties' representatives should be weighed and their credibility evaluated in the same way as that of any other witness.  Your job is to consider the testimony of each witness you have heard and decide how much you believe of what each witness had to say. In making up your mind and reaching a verdict, do not make any decisions simply because there

were more witnesses on one side than on the other.  Do not reach a conclusion on a particular point just because there were more witnesses testifying for one side on that point.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.*, case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; preliminary jury instructions given in *Retractable Technologies Inc., et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 2, 2009).

**1.12    BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more likely true than not true.

Let me you an example.  Take the evidence and imagine that it is equally balanced on a scale, so that both sides of the scale are even.  Now take a feather and add it to one side of the scale, so that the scale tips ever so slightly in that direction.  That is a preponderance of the evidence.

You should base your decision on all of the evidence regardless of which party presented it.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; preliminary jury instructions given in *Retractable Technologies Inc., et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 2, 2009).

## 1.13   BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means the party must persuade you that it is highly probable that the facts are as that party contends.  Such evidence requires a higher standard of proof than proof by a preponderance of the evidence.  Again, you should base your decision on all of the evidence regardless of which party presented it.

The clear and convincing standard is not as high as the burden of proof applied in a criminal case, which is beyond a reasonable doubt.

Authority: Preliminary jury instructions given in the invalidity phase of *Alexsam, Inc. v. Best Buy Stores, LP, et al.,* case no. 2:13-cv-00002 (E.D. Tex. Apr. 29, 2013); preliminary jury instructions given in *Alexsam v. Pier 1 Imports, Inc.,* case no. 2:08-cv-00015 (E.D. Tex. Oct. 17, 2011); preliminary jury instructions given in *Retractable Technologies Inc., et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 2, 2009).

**1.14    OPINION EVIDENCE—EXPERT WITNESSES**

We are going to have what are called expert witnesses in this case.  When technical or other specialized knowledge may be helpful to the jury, a person who has special training or experience in that technical field, called an expert witness, is permitted to state his or her opinion on those matters.

However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.  Again, you the jurors are the sole judges of the credibility of all witnesses, including expert witnesses.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; preliminary jury instructions given in *Retractable Technologies Inc., et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 2, 2009).

## 1.15    INTERROGATORIES AND INTERROGATORY RESPONSES

During the trial of this case, certain evidence may be presented to you by way of one party's responses to interrogatories from the other party.  An interrogatory is a written question, prepared and submitted by a party in accordance with established legal procedures, that seeks information relevant to the case.  An interrogatory response is the opposing party's written answer to such a question.  These answers were provided by the parties in writing and under oath, before the trial.  You should consider these responses, to the extent possible, in the same manner as if they were given on the witness stand.

Authority: Federal Rule of Civil Procedure 33; Ninth Circuit Model Civil Jury Instruction 2.10.

**1.16    DEPOSITION EVIDENCE**

During the trial of this case, certain testimony may be presented to you by way of deposition.  The testimony of a witness who, for some reason, cannot be present to testify from the witness stand is usually presented either in writing or by way of a video under oath in the form of a deposition.  Some time before this trial, attorneys questioned these witnesses under oath.  A court reporter was present and recorded the testimony.   Such testimony is entitled to the same consideration and, insofar as possible, is to be judged as to credibility, weighed, and otherwise considered by you in the same way as if the witness had been present and had given from the witness stand the testimony read or shown to you from a deposition.   Again, you evaluate the credibility of a witness equally whether the witness testifies live from the witness stand or by videotaped deposition.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; preliminary jury instructions given in *Retractable Technologies Inc., et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 2, 2009).

## 1.17   ATTORNEY'S DUTY TO OBJECT

It is the duty of the attorney on each side of the case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  Upon allowing testimony or other evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence.  As stated before, the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all of the evidence.

When the Court has sustained an objection to a question addressed to a witness, the jury must disregard the question entirely and may draw no inference from the wording of it or speculate as to what the witness would have said if permitted to answer that question.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218.

# PART 2
# FINAL INSTRUCTIONS

## 2.1    INTRODUCTION TO THE FINAL CHARGE

MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you, the attorneys will have an opportunity to make their closing arguments.  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' positions.

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

You will remember that at the beginning of this trial I gave you some general instructions and definitions.  I will repeat them now to aid you in your deliberations.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Oasis Research, LLC v. Carbonite, Inc. et al.,* case no. 4:10-cv-00435 (E.D. Tex. Mar. 22, 2013); jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013); final jury instructions given in *Ambato Media, LLC v. Clarion Co., Ltd.,* case no. 2:09-cv-00242 (E.D. Tex. Sep. 5, 2012); final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

**2.2    GENERAL INSTRUCTIONS—BURDEN OF PROOF**

### a.   Burden of Proof—Preponderance of the Evidence

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more likely true than not true.

Again, I shall give you the example of the scale.  Take the evidence and imagine that it is equally balanced on a scale, so that both sides of the scale are even.  Now take a feather and add it to one side of the scale, so that the scale tips ever so slightly in that direction.  That is a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

### b.   Burden of Proof—Clear and Convincing Evidence

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means the party must persuade you that it is highly probable that the facts are as that party contends.  Such evidence requires a higher standard of proof than proof by a preponderance of the evidence.

The clear and convincing standard is not as high as the burden of proof applied in a criminal case, which is beyond a reasonable doubt.

Again, you should base your decision on all of the evidence, regardless of which party presented it.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Oasis Research, LLC v. Carbonite, Inc. et al.,* case no. 4:10-cv-00435 (E.D. Tex. Mar. 22, 2013); jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013); final jury instructions given in *Ambato Media, LLC v. Clarion Co., Ltd.,* case no. 2:09-cv-00242 (E.D.

Tex. Sep. 5, 2012); final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

**2.3    GENERAL INSTRUCTIONS: EVIDENCE IN THE CASE**

The evidence you are to consider includes:

(1) The sworn testimony of any witness;

(2) the exhibits which are received into evidence; and

(3) any facts to which the lawyers stipulate.

The following are not evidence, and you must not consider them as evidence in deciding

the facts of this case:

(1) statements and arguments of the attorneys;

(2) questions and objections of the attorneys;

(3) testimony that I instruct you to disregard; and

(4) anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Oasis Research, LLC v. Carbonite, Inc. et al.,* case no. 4:10-cv-00435 (E.D. Tex. Mar. 22, 2013); final jury instructions given in *Ambato Media, LLC v. Clarion Co., Ltd.,* case no. 2:09-cv-00242 (E.D. Tex. Sep. 5, 2012); final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

**2.4      GENERAL INSTRUCTIONS: CONSIDERATION OF THE EVIDENCE**

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence, you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence—such as testimony of an eyewitness.  The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence but simply requires that you find the facts from all of the evidence, both direct and circumstantial, regardless of the burden of proof involved.

Do not let bias, prejudice, or sympathy play any part in your deliberations.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

The Court has assigned numbers to the trial exhibits.  You should not construe any significance to the exhibit numbers.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Oasis Research, LLC v. Carbonite, Inc. et al.,* case no. 4:10-cv-00435 (E.D. Tex. Mar. 22, 2013); jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013); final jury instructions given in *Ambato Media, LLC v. Clarion Co., Ltd.,* case no. 2:09-cv-00242 (E.D.

Tex. Sep. 5, 2012); final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

**2.5     GENERAL INSTRUCTIONS: DEMONSTRATIVE EXHIBITS**

Certain exhibits shown to you are illustrations.   We call these types of exhibits "demonstrative exhibits."   Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial.

If your recollection of the evidence differs from the exhibit, rely on your recollection. While demonstrative exhibits may have been helpful to you in determining the issues, the demonstrative exhibits of both parties are not evidence or proof of any facts.   If they do not correctly reflect the evidence in this case, you should disregard these demonstrative exhibits and determine the facts from the underlying evidence.   Demonstrative exhibits are not admitted into evidence and will not be available to you during your deliberations.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Oasis Research, LLC v. Carbonite, Inc. et al.,* case no. 4:10-cv-00435 (E.D. Tex. Mar. 22, 2013); jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013); final jury instructions given in *Ambato Media, LLC v. Clarion Co., Ltd.,* case no. 2:09-cv-00242 (E.D. Tex. Sep. 5, 2012); final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

**2.6     GENERAL INSTRUCTIONS: CREDIBILITY OF WITNESSES**

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony.  An important part of your job will be making judgments about the testimony of the witnesses, including Plaintiff's and Defendants' representatives, who testified in this case.  You should decide whether you believe all or any part of what each person had to say, and how important that testimony was.

In making that decision I suggest that you ask yourself a few questions: Did the person impress you as honest?  Did the witness have any particular reason not to tell the truth?  Did the witness have a personal interest, such as financial interest or continued employment or business, in the outcome of the case?  Did the witness have any relationship with one of the parties, such as being employed by an entity indemnifying one of the parties?  Did the witness seem to have a good memory?  Did the witness clearly see or hear the things about which he or she testified?  Did the witness have the opportunity and ability to understand the questions clearly and answer them directly?  Did the witness's testimony differ from the testimony of other witnesses?  These are a few of the considerations that will help you determine the accuracy of what each witness said.

The testimony of the parties' representatives should be weighed and their credibility evaluated in the same way as that of any other witness.

Your job is to think about the testimony of each witness you have heard and decide how much you believe of what each witness had to say.  In making up your mind and reaching a verdict, do not make any decisions simply because there were more witnesses on one side than on the other.  Do not reach a conclusion on a particular point just because there were more witnesses testifying for one side on that point.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Oasis Research, LLC v. Carbonite, Inc. et al.,* case no. 4:10-cv-00435 (E.D. Tex. Mar. 22, 2013); jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013); final jury instructions given in *Ambato Media, LLC v. Clarion Co., Ltd.,* case no. 2:09-cv-00242 (E.D. Tex. Sep. 5, 2012); final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

## 2.7    GENERAL INSTRUCTIONS: EXPERT WITNESSES

When technical or other specialized knowledge may be helpful to the jury, a person who has special training or experience in that field—called an expert witness—is permitted to state his or her opinion on those matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.  As stated before, the jurors are the sole judges of the credibility of all witnesses, including expert witnesses.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Oasis Research, LLC v. Carbonite, Inc. et al.,* case no. 4:10-cv-00435 (E.D. Tex. Mar. 22, 2013); jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013); final jury instructions given in *Ambato Media, LLC v. Clarion Co., Ltd.,* case no. 2:09-cv-00242 (E.D. Tex. Sep. 5, 2012); final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

## 2.8 GENERAL INSTRUCTIONS: DEPOSITION TESTIMONY

Certain testimony was presented to you through deposition.  A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, or the parties otherwise agree, that witness's testimony may be presented, under oath, in the form of a deposition.  Sometime before this trial, attorneys questioned that witness under oath.  A court reporter was present and recorded the testimony.  This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Oasis Research, LLC v. Carbonite, Inc. et al.,* case no. 4:10-cv-00435 (E.D. Tex. Mar. 22, 2013); jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013); final jury instructions given in *Ambato Media, LLC v. Clarion Co., Ltd.,* case no. 2:09-cv-00242 (E.D. Tex. Sep. 5, 2012); final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

**2.9     GENERAL INSTRUCTIONS: IMPEACHMENT**

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was intentional or simply an innocent lapse of memory.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218.

## 2.10   GENERAL INSTRUCTIONS: OBJECTIONS

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.

Upon allowing testimony or other evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence.  As stated before, the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court has sustained an objection to a question addressed to a witness, the jury must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have said if permitted to answer that question.  When the Court has overruled an objection, the jury shall assign no extra weight to that question or response.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Oasis Research, LLC v. Carbonite, Inc. et al.,* case no. 4:10-cv-00435 (E.D. Tex. Mar. 22, 2013); jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013).

## 2.11    GENERAL INSTRUCTIONS: USE OF NOTES

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Oasis Research, LLC v. Carbonite, Inc. et al.,* case no. 4:10-cv-00435 (E.D. Tex. Mar. 22, 2013); jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013).

## 2.12    INTRODUCTION TO SPECIFIC INSTRUCTIONS

At the beginning of the trial, you were given some general information about patents and

the patent system and a brief overview of the patent laws relevant to this case.  I will now briefly

review the contentions of the parties and give you more detailed instructions about the patent laws

that specifically relate to this case.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218.; jury charge given in *Oasis Research, LLC v. Carbonite, Inc. et al.,* case no. 4:10-cv-00435 (E.D. Tex. Mar. 22, 2013); jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013).

## 2.13    SPECIFIC INSTRUCTIONS: CONTENTIONS OF THE PARTIES

The plaintiff, Imperium IP Holdings (Cayman), Ltd., asserts that defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC, and Samsung Semiconductor, Inc., infringe certain claims of United States Patent Nos. 6,271,884 (the '884 patent), 6,836,290 (the '290 patent), and 7,092,029 (the '029 patent).  In particular, Imperium contends that Samsung infringement claims 1, 5, 6, 14, 17, 18, and 19 of the '884 patent, claims 1 and 10 of the '290 patent, and claims 1, 6, and 7 of the '029 patent.

Imperium asserts that Samsung infringes claims 1, 5, 6, 14, 17, 18, and 19 of the '884 patent, claims 1 and 10 of the '290 patent, and claims 1, 6, and 7 of the '029 patent.  Imperium seeks damages from Samsung for infringing the patents at issue. And Imperium asserts Samsung knowingly and willfully infringed one or more of these three patents.

Samsung denies that it has infringed, or infringes, the asserted claims of the patents-in-suit. Samsung alleges that the asserted claims are invalid.  Samsung further alleges that Imperium is barred in whole or in part from recovering damages under the principle of laches.

Those are the positions of the parties that are here before you today.  Your job is going to be to decide whether claims 1, 5, 6, 14, 17, 18, and 19 of the '884 patent, claims 1 and 10 of the '290 patent, and claims 1, 6, and 7 of the '029 patent have been infringed and whether any of these claims are invalid, and whether any infringement that you find was willful.  If you decide that any of the claims have been infringed and are not invalid, then you must consider the defendants' laches defense and determine any money damages that should be awarded to the plaintiff to compensate it for any infringement that you found.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Oasis Research, LLC v. Carbonite, Inc. et al.,*

case no. 4:10-cv-00435 (E.D. Tex. Mar. 22, 2013); jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013); final jury instructions given in *Ambato Media, LLC v. Clarion Co., Ltd.,* case no. 2:09-cv-00242 (E.D. Tex. Sep. 5, 2012); final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

**2.14    SPECIFIC INSTRUCTIONS: STIPULATED FACTS**

Before this trial started, the parties stipulated or agreed that certain facts are true. These

facts are as follows:

1.  Plaintiff Imperium IP Holdings (Cayman), Ltd. is the owner of the patents-in-suit.

2.  Plaintiff Imperium IP Holdings (Cayman), Ltd. is incorporated in the Cayman Islands
    with its principal place of business in New York.

3.  Defendant Samsung Electronics Co., Ltd. is a South Korean company with its principal
    place of business at 416, Maetan 3-dong, Yeongtong-gu, Suwon-si, Gyeonggi-do 443-
    742, Korea.

4.  Defendant Samsung Electronics America, Inc. is a subsidiary of Samsung Electronics
    Co., Ltd. and is a corporation organized and existing under the laws of the State of New
    York with principal place of business in New Jersey.

5.  Defendant Samsung Semiconductor, Inc. is an indirect subsidiary of Samsung
    Electronics Co., Ltd. and is a California company with its principal place of business
    in California.

6.  On August 7, 2001, the USPTO issued United States Patent No. 6,271,884, entitled
    "Image Flicker Reduction With Fluorescent Lighting."

7.  The named inventors of the '884 Patent are Randall M. Chung, Magued M. Bishay,
    and Joshua Ian Pine.

8.  On December 28, 2004, the USPTO issued United States Patent No. 6,836,290, entitled
    "Combined Single-Ended and Differential Signaling Interface."

9.  The named inventors of the '290 Patent are Randall M. Chung, Ferry Gunawan, and
    Dino D. Trotta.

10. On August 15, 2006, the USPTO issued United States Patent No. 7,092,029, entitled
    "Strobe Lighting System for Digital Images."

11. The named inventors of the '029 Patent are Robert A. Medwick and Glenn Stark.

You should therefore consider that these facts are conclusively established.


Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-
cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Oasis Research, LLC v. Carbonite, Inc. et al.,*

case no. 4:10-cv-00435 (E.D. Tex. Mar. 22, 2013); jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013); final jury instructions given in *Ambato Media, LLC v. Clarion Co., Ltd.,* case no. 2:09-cv-00242 (E.D. Tex. Sep. 5, 2012).

## 2.15    SPECIFIC INSTRUCTIONS: CLAIM INTERPRETATION

Before you can decide many of the issues in this case, including infringement, you will need to understand the role of patent "claims."  The claims of a patent are the numbered sentences at the end of the patent.  The patents at issue in this case are in your juror notebooks. The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing.  The figures and text in the rest of a patent provide a description and examples of the invention and provide a context for the claims, but the claims define how broad or narrow a patent's coverage is.  Each claim is effectively treated as if it were a separate invention, and each claim may cover more or less than another claim.  Therefore, what a patent covers depends upon what each of its claims cover.

Claims are usually divided into parts or steps, called "limitations" or "elements."  For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop.  In this example, the tabletop, legs, and glue are each a separate limitation or element of the claim.

Claims may describe products, methods, systems, or apparatuses.  The claims raised in this case from the '884, '290, and '029 patents address system and method claims.

In deciding whether or not a claim is infringed, the first step is to understand the meaning of the words used in the patent claims.

It is my job as the judge to determine what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use those meanings when you decide whether the claims are infringed.  I have interpreted the meaning of some of the language in the patent claims involved in this case.  My interpretation of those claims appears in your juror

notebook and also in Appendix A to this charge.  Any claim language I have not interpreted is to

be given its ordinary and accustomed meaning as understood by one of ordinary skill in the art.

[*Court then reads Appendix A claim constructions to the jury*.]


Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013); final jury instructions given in *Ambato Media, LLC v. Clarion Co., Ltd.,* case no. 2:09-cv-00242 (E.D. Tex. Sep. 5, 2012); final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

## 2.16   SPECIFIC INSTRUCTIONS: INDEPENDENT AND DEPENDENT CLAIMS

Patent claims may exist in two forms, referred to as independent claims and dependent claims.  An independent claim sets forth all the requirements that must be met in order to be covered by that claim and does not refer to any other claim of the patent.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  For example, claims 1 and 14 of the '884 patent, claims 1 and 10 of the '290 patent, and claims 1 and 7 of the '290 patent are independent claims.

A dependent claim does not itself recite all of the requirements of the claim but refers to at least one other claim in the patent for some of its requirements.  A dependent claim includes all the elements of the other claim to which it refers, as well as the elements recited in the dependent claim.  In this way, the claim "depends" on another claim.  To determine what a dependent claim covers, it is necessary to look both at the dependent claim and the other claim or claims to which it refers.  For example, claims 5 and 6 of the '884 patent are dependent claims that depend on independent claim 1 of the '884 patent; claim 6 of the '029 patent is a dependent claim that depends on independent claim 1 of the '029 patent.

If you find that an independent claim is not infringed, then you must also find that its dependent claims are not infringed.  If you find that an independent claim is infringed, you must further decide whether its dependent claims are also infringed.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 123; jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013); final jury instructions given in *Ambato Media, LLC v. Clarion Co., Ltd.,* case no. 2:09-cv-00242 (E.D. Tex. Sep. 5, 2012); final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

**2.17    SPECIFIC INSTRUCTIONS: GLOSSARY OF PATENT TERMS**

As in your notebooks, a glossary of general patent terms is contained in Appendix B of this

Charge.


Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218.

**2.18   SPECIFIC INSTRUCTIONS: DIRECT INFRINGEMENT—LITERAL INFRINGEMENT**

In determining infringement, once the patent is issued, the owner of a patent has a right to exclude others from making, using, offering to sell, or selling the patented invention throughout the United States or importing the patented invention into the United States for a term of 20 years.

Infringement occurs when a party, without the patent owner's permission, makes, uses, offers to sell, or sells the patented invention anywhere in the United States or imports the patented invention into the United States while the patent is in force.  To determine whether there is an infringement, you must compare the allegedly infringing product, system or method with the scope of the patent claims as I have defined them for you.

I will now instruct you as to the rules you must follow when deciding whether Imperium has proven Samsung infringes any of the asserted claims of the '884, '290, and '029 patents. Remember that Imperium bears the burden of proving by a preponderance of the evidence that Samsung infringes the asserted claims.  In other words, that it is more likely than not that the claims are infringed.

In order to infringe a patent claim on a product, system or method, the product must have, or the system or method must perform, each element or limitation required by the claim.

A claim limitation is literally present if it exists in the accused product, system or method as it is described in the claim language, either as I have explained that language to you, or, if I did not explain it, as it would be understood by one of ordinary skill in the art.  If the accused systems or methods omit even a single limitation, then you must find that the claim is not infringed.

You must consider each of the patent claims separately.  If you find that each limitation of a patented claim is present or performed by an accused product, system, or method, then the claim

is infringed.  This is so even if the accused Samsung products, systems, or methods may be more or less efficient or even if it include additional features or functions not found in the claims.

Whether or not Samsung knew that what it was doing was an infringement does not matter for your consideration of infringement.  A party may be found to be a direct infringer of a patent even if it did not actually know of the patent or even if believed in good faith that what it was doing was not an infringement of any patent

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013); final jury instructions given in *Ambato Media, LLC v. Clarion Co., Ltd.,* case no. 2:09-cv-00242 (E.D. Tex. Sep. 5, 2012); final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

**2.19    SPECIFIC INSTRUCTIONS: DIRECT INFRINGMENT—DOCTRINE OF EQUIVALENTS**

If a company makes, uses, sells, offers to sell within, or imports into the United States a product or process that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product, system, or process satisfies that claim under the "doctrine of equivalents."

Under the doctrine of equivalents, an accused product or process infringes a claim if the accused product or process contains elements or performs steps corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the accused product or process.  You may find that an element or step is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be insubstantial or would have found that the structure or actions: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim.  In order for a structure or action to be considered interchangeable, the structure or action must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent.  Interchangeability at the present time is not sufficient.

In order to prove infringement by "equivalents," the plaintiff must prove the equivalency of a structure or action to a claim element by a preponderance of the evidence.

Authority: Federal Circuit Bar Association Model Patent Jury Instructions, 3.1c; final jury instructions given in *Ambato Media, LLC v. Clarion Co., Ltd.,* case no. 2:09-cv-00242 (E.D. Tex. Sep. 5, 2012); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 731-34 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 28-29 (1997).

## 2.20  SPECIFIC INSTRUCTIONS: INDIRECT INFRINGEMENT—INDUCING PATENT INFRINGEMENT

Imperium asserts that Samsung induced infringement of certain claims of the '884 and '029 patents.  A party induces patent infringement if it purposefully causes, urges, or encourages another to infringe the claims of a patent.  Inducing infringement cannot occur unintentionally.  This is different from direct infringement, which can occur unintentionally.

To prove that Samsung induced patent infringement, Imperium must prove that it is more probable than not that:

1.  Samsung knew of—or was willfully blind to—the existence of a patent; and

2.  Samsung knew it was inducing acts that constituted infringement of a patent, or was willfully blind to that fact.

To find willful blindness: (1) Samsung must have subjectively believed that there was a high probability that a patent existed covering the accused process or system and (2) Samsung must have taken deliberate actions to avoid learning of the patent.

Imperium must prove that Samsung had a specific intent to induce the infringement. Imperium must prove that Samsung knowingly induced infringement, not merely that Samsung knowingly induced the acts that constitute infringement.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; final jury instructions given in *Ambato Media, LLC v. Clarion Co., Ltd.,* case no. 2:09-cv-00242 (E.D. Tex. Sep. 5, 2012); *Commil USA, LLC v. Cisco Systems, Inc.,* 135 S. Ct. 1920, 1925-28 (2015); *Global-Tech Appliances, Inc. v. SEB S.A.,* 131 S. Ct. 2060, 2065-68, 2070-72 (2011).

## 2.21   SPECIFIC INSTRUCTIONS: WILLFUL INFRINGEMENT

In this case, Imperium contends both that Samsung infringed the asserted claims of the '884, '290, and '029 patents, and, further, that Samsung infringed willfully.  If you find that Samsung infringed the asserted claims of the patents-in-suit, then you must go on to address the additional issue of whether or not this infringement was willful.

Willfulness requires you to determine by clear and convincing evidence that Samsung acted recklessly.  To prove that Samsung acted recklessly, Imperium must persuade you that Samsung actually knew of the risk of infringement, or that the risk of infringement was so clear from the circumstances that Samsung should have known of the risk.  To determine whether Samsung had this state of mind, consider all facts which may include, but are not limited, to:

(1) Whether or not Samsung acted in accordance with the standards of commerce for its industry;

(2) Whether or not Samsung intentionally copied a product that is covered by the patents-in-suit;

(3) Whether or not there is a reasonable basis to believe that Samsung did not infringe or had a reasonable defense to infringement;

(4) Whether or not Samsung made a good-faith effort to avoid infringing the patents-in-suit, for example, whether Samsung attempted to design around the patents; and

(5) Whether or not Samsung tried to cover up its infringement.

In addition, you may consider whether Samsung sought out and reasonably relied on the opinion of an attorney regarding infringement.  A competent opinion of counsel stating that a defendant does not infringe a patent may show that the defendant had a good faith belief that it did not infringe the patent, and thus did not willfully infringe.  On the other hand, the failure of the defendant to seek out and obtain any opinion at all may show that the defendant acted recklessly, and thus willfully infringed the patent.

Authority: Federal Circuit Bar Association Model Patent Jury Instructions, 3.8; jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013); final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009); *Finisar Corp. v. DirecTV Group, Inc.,* 523 F.3d 1323, 1339 (Fed. Cir. 2008); *In re Seagate Tech. LLC,* 497 F.3d 1360, 1370-72 (Fed. Cir. 2007); *Golden Blount, Inc. v. Robert H. Peterson Co.,* 438 F.3d 1354, 1366-70 (Fed. Cir. 2006); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337, 1345 (Fed. Cir. 2004) (en banc) (overruled on other ground by *In re Seagate Tech.,* 497 F.3d 1360); *L.A. Gear v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1126 (Fed. Cir. 1993); *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 829 (Fed. Cir. 1992) (abrogated on other grounds by *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 975 (Fed. Cir. 1995)); *Kloster Speedsteel AB v. Crucible, Inc.,* 793 F.2d 1565, 1579 (Fed. Cir. 1986) (overruled on other ground by *Knorr-Bremse,* 383 F.3d 1337).

## 2.22   SPECIFIC INSTRUCTIONS: INVALIDITY GENERALLY

I will now instruct you on the rules you must follow in deciding whether or not Samsung has proven that the asserted claims of the patents-in-suit are invalid.  A patent claim may be invalid in light of what is called "prior art" under two theories.  First, a claim may be anticipated if a single piece of prior art includes each and every limitation of the claim.  Second, a claim may be invalid if each of the limitations of the claim would have been obvious at the time the patent application was filed—even if it was not anticipated.

Samsung contends that all of the asserted claims of the '884, '290, and '029 patents are invalid as either (1) anticipated by certain prior art references, which may include prior art products, patents, and publications, or (2) obvious in light of that same prior art.  In particular, Samsung contends that claims 1, 5, 6, 14, and 17 of the '884 patent, claim 1 of the '290 patent, and claims 1, 6, and 7 of the '029 patent are invalid as anticipated.  Samsung contends that claims 5, 6, 17, 18, and 19 of the '884 patent, claims 1 and 10 of the '290 patent, and claims 1, 6, and 7 of the '029 patent are invalid as obvious.

Under the law, an issued patent is accorded a presumption of validity based on the presumption that the United States Patent Office acts correctly in issuing patents.  To prove that an asserted claim of a patent is invalid, Samsung must prove by clear and convincing evidence that the claim is invalid.  Even if Samsung provides prior art that was not before the Patent Office, the presumption of validity of the patents remains intact and the clear and convincing standard does not change.

Authority: Jury instructions in *Stragent, LLC et al. v. Intel Corp.,* case no. 6:11-cv-00421 (E.D. Tex.), D.I. 327; jury charge given in *Oasis Research, LLC v. Carbonite, Inc. et al.,* case no. 4:10-cv-00435 (E.D. Tex. Mar. 22, 2013); final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

**2.23    SPECIFIC INSTRUCTIONS: INVALIDITY--PRIOR ART**

Before you can determine whether the patent claims are valid in light of the prior art, you must determine what qualifies as a prior art reference.  Prior art is not art as one might generally understand the word art.  Rather, prior art is a technical term relating to patents.  In general, prior art includes things that existed before the claimed invention that were publicly known or used in a publicly accessible way in this country or that were patented or described in a publication in any country.  A prior art reference might typically be a patent, patent application, or a printed publication such as an article.

You have heard evidence of prior art references that the Patent Office may or may not have evaluated before granting the '884, '290, and '029 patents.  You must determine whether that evidence is materially new, and if so, take that fact into consideration in determining whether Samsung has proven its invalidity defense has been proven by clear and convincing evidence.  Prior art differing from the prior art considered by the Patent Office does not necessarily carry more weight than prior art that was considered by the Patent Office.

Authority: Jury instructions in *Stragent, LLC et al. v. Intel Corp.,* case no. 6:11-cv-00421 (E.D. Tex.), D.I. 327; final jury instructions given in Retractable Technologies Inc. et al. v. Becton, Dickinson and Co., case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

**2.24    SPECIFIC INSTRUCTIONS: INVALIDITY—ANTICIPATION**

Samsung contends that certain prior art references "anticipate" the asserted claims, rendering them invalid.   You may find a claim anticipated only if each and every one of its elements or limitations were present in a single prior art reference in the arrangement claimed.   To anticipate, a prior art reference does not have to use the same words as the claim, but all of the requirements of the claim must have been present so that a person of ordinary skill in the art could make and use the claimed invention based on that knowledge.   Samsung must prove anticipation by clear and convincing evidence.

Authority: Jury instructions in *Stragent, LLC et al. v. Intel Corp.,* case no. 6:11-cv-00421 (E.D. Tex.), D.I. 327; final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

**2.25    SPECIFIC INSTRUCTIONS: INVALIDITY—OBVIOUSNESS**

Samsung also contends that certain prior art references, either alone or in combination with each other, render the asserted claims obvious based on the knowledge and skill of a person of ordinary skill at the time of the alleged inventions.   I will now instruct you on the law of obviousness.

Even if a claim invention was not fully anticipated because it was not exactly described or disclosed in a single-prior art reference, a patent claim may still be invalid if the alleged invention would have been obvious to a person of ordinary skill in the art at the time of the alleged invention. In determining whether a claimed invention was obvious, you must consider (a) the level of ordinary skill in the art that someone would have had at the time of the claimed invention, (b) the scope and content of the prior art, (c) any differences between the prior art and the claimed invention; and (d) any objective considerations showing non-obviousness or non-obviousness, such as whether invention covered by the claims was commercially successful or has been previously licensed by other parties.  I have already instructed you about how to determine what qualifies as prior art.   It will be up to you to evaluate what those prior art references taught or disclosed and how they differed from the claimed invention.   A claim can be obvious over the prior art based on a combination of references or considering a single reference.

In assessing obviousness or nonobviousness, keep in mind that an invention is not obvious simply because each of its elements appeared in the prior art.   Many inventions are created by taking building blocks that existed in the prior art and combining them in new and different ways. You cannot judge obviousness in hindsight.   Rather, you should consider whether there was a reason that would have prompted a person of ordinary skill in the art at the time of the claimed

invention to combine the known elements in a way that the claimed invention did.  Factors you

may consider in this regard include:

1. Whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;
2. Whether the claimed invention provided an obvious solution to a known problem;

3. Whether the prior art taught or suggested the desirability of combining elements claimed in the invention;

4. Whether it would have been obvious to try to create the invention—for example, if there was a design need or market pressure to solve a problem and there were a finite number of identified, predictable solutions; and

5. Whether the claimed combination would have occurred anyway due to design incentives or other market forces.

You should also take into account any objective evidence, sometimes called "secondary

considerations," that may shed light on the obviousness or nonobviousness of the claimed

invention.  While these considerations are labeled "secondary considerations," they are not

secondary at all.  Rather, they may often be the strongest and most important evidence of validity

in the case.  These considerations include the following:

(1) the commercial success of the patented invention;

(2) the long-felt but unsolved need for a system or method filled by the patented invention;

(3) the failure of others to solve the problem addressed by the patented invention;

(4) the commercial acquiescence of competitors, evidenced, for example, by licensing of the patented invention;

(5) teaching away from the patented invention by the prior art;

(6) the acclamations or industry praise a product receives, and the copying of the product that occurs, when it is released;

(7) the contemporaneous attitude or reaction of others, particularly experts or those learned in the relevant field, to the patented invention;

(8)  expert skepticism; and

(9) unexpected results of the commercial embodiment of the patented invention.

For example, if products incorporating the invention were commercially successful as a result of the claimed invention, then that may suggest that the invention was not obvious.  If you find that the claimed invention satisfied a long-felt but previously unsolved need, that may also suggest that the invention was nonobvious.  On the other hand, if you find that someone else came up with the claimed invention before or around the same time that the inventor thought of it, that may suggest the claimed invention was obvious.  Finally, acceptance of the claimed invention by others shown by licensing of the claimed invention may also show that the claimed invention was not obvious.  In this consideration, you should give less weight to a license entered into the purpose of avoiding the cost of litigation, all things being equal.

Keep in mind that all the factors I have just mentioned relate to obviousness only, not anticipation.  Samsung must prove obviousness by clear and convincing evidence.

Authority: Federal Circuit Bar Association Model Patent Jury Instructions, 4.3c; jury instructions in *Stragent, LLC et al. v. Intel Corp.,* case no. 6:11-cv-00421 (E.D. Tex.), D.I. 327; final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009); *Apple Inc. v. International Trade Com'n,* 725 F.3d 1356, 1366-67 (Fed. Cir. 2013); *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.,* 688 F.3d 1342, 1369-71 (Fed. Cir. 2012); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.,* 699 F.3d 1340, 1349 (Fed. Cir. 2012); *Pressure Prods. Med. Supplies v. Greatbatch Ltd.,* 599 F.3d 1308, 1319 (Fed. Cir. 2010); *Ecolochem, Inc. v. Southern Cal. Edison Co.,* 227 F.3d 1361, 1379 (Fed. Cir. 2000); *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH,* 139 F.3d 877, 883-84 (Fed. Cir. 1998); *Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1143-44 (Fed. Cir. 1985); *RCA Corp. v. Applied Digital Data Systems, Inc.,* 730 F.2d 1440, 1448 (Fed. Cir. 1984); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966).

**2.26   SPECIFIC INSTRUCTIONS: LACHES**

Samsung contends that Imperium is not entitled to recover damages for acts that occurred before it filed its lawsuit because: (1) Imperium delayed filing the lawsuit for an unreasonably long and inexcusable period of time; and (2) Samsung has been or will be prejudiced in a significant way due to Imperium's delay in filing the lawsuit.  This is referred to as laches.  Samsung must prove delay and prejudice by a preponderance of the evidence.

Whether Imperium's delay was unreasonably long and inexcusable is a question that must be answered by considering the answered by considering the facts and circumstances as they existed during the period of delay.  There is no minimum amount of delay required to establish laches.  If suit was delayed for six years, a rebuttable presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted.  This presumption shifts the burden of production to Imperium to come forward with evidence to prove that the delay was justified or that material prejudice did not result, and if Imperium presents such evidence, the burden of proving laches remains with Samsung.  Laches may be found for delays of less than six years if there is proof of unreasonably long and unjustifiable delay causing material prejudice to Samsung.  Facts and circumstances that can justify a long delay, if any, can include:

1. Being involved in other litigation during the period of delay;

2. Being involved in negotiations with Samsung during the period of delay;

3. Being involved in a dispute about ownership of the patent during the period of delay; or

4. Minimal amounts of allegedly infringing activity by Samsung during the period of delay.

If you find unreasonable and unjustified delay occurred, to find laches, you must also determine if Samsung proved that it suffered material prejudice as a result of the delay.  Prejudice to Samsung can be evidentiary or economic.  Whether Samsung suffered evidentiary prejudice is

a question that must be answered by evaluating whether delay in filing this case resulted in Samsung not being able to present a full and fair defense on the merits to Imperium's infringement claim.  Not being able to present a full and fair defense on the merits to an infringement claim can occur due to the loss of important records, the death or impairment of an important witness, the unreliability of memories about important events because they occurred in the distant past, or other similar types of things.  Economic prejudice is determined by whether or not Samsung changed its economic position in a significant way during the period of delay resulting in losses beyond merely paying for infringement (such as if Samsung could have switched to a noninfringing product if sued earlier), and also whether Samsung's losses as a result of that change in economic position likely would have been avoided if Imperium had filed this lawsuit earlier.  In all scenarios, though, the ultimate determination of whether laches should apply in this case is a question of fairness, given all the facts and circumstances.

Thus, you may find that laches does not apply if there is no evidence establishing each of the three elements noted above (unreasonable delay, lack of excuse or justification, and significant prejudice).  You may also find that even though all of the elements of laches have been proved, it should not, in fairness, apply, given all the facts and circumstances in this case.


Authority: Federal Circuit Bar Association Model Patent Jury Instructions, 5.2.

**2.27    SPECIFIC INSTRUCTIONS: DAMAGES—GENERALLY**

I will now instruct you on damages.

If you find that Samsung has infringed any of the asserted claims of the '884, '290, or '029 patents, you must determine the amount of money damages to which Imperium is entitled.  By instructing you on damages, I do not suggest that one or the other party should prevail.  These instructions are provided to guide you on the calculation of damages in the event you find infringement of any patent claim and thus must address the damages issue.

The amount of damages must be adequate to compensate Imperium for the infringement, but it may not be less than a "reasonable royalty" for the use Samsung made of Imperium's patents.  At the same time, your damages determination must not include additional sums to punish Samsung or to set an example.  You may award compensatory damages only for the loss that Imperium proves was more likely than not caused by Samsung's infringement.

Authority: 35 U.S.C. § 284; jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013); final jury instructions given in *Ambato Media, LLC v. Clarion Co., Ltd.,* case no. 2:09-cv-00242 (E.D. Tex. Sep. 5, 2012); final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

## 2.28   SPECIFIC INSTRUCTIONS: DAMAGES—BURDEN OF PROOF

Where the parties dispute a matter concerning damages, it is Imperium's burden to prove its version is correct by a preponderance of the evidence.  Imperium must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision.  However, Imperium is not entitled to damages that are remote or speculative.

Authority: Derived from jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013); final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

## 2.29   SPECIFIC INSTRUCTIONS: DAMAGES—WHEN DAMAGES BEGIN

If you find that Samsung has infringed any of the claims, Imperium can recover damages it proves by a preponderance of the evidence for a period of up to six years before the filing date of the complaint.  The complaint in this case was filed on June 9, 2014.  Thus, the damages period runs from June 9, 2008, through the present.

However, Imperium's damages from June 9, 2008 to June 9, 2014, if any, may be limited if you find that it did not satisfy a requirement of patent marking.  "Marking" requires a patentee to display the word "patent" or the abbreviation "pat.", together with the number of the patent, on substantially all of the "patented articles" made, offered for sale, or sold under its patent.

You must decide whether Imperium satisfied the marking requirement.  Imperium has the burden of establishing by a preponderance of the evidence that it satisfied the marking requirement. Satisfying the marking requirement does not require perfect marking. Rather, substantially all of the patented articles must have been marked.

You should consider both Imperium's activities and the activities of its licensees.

After the patents issued, Imperium itself never manufactured or sold a product that was covered by the patents-in-suit requiring marking.

Thus, you must determine whether Imperium's licensees ever made, offered for sale, or sold any patented articles under the '884, '290, and '029 patents after entering a license for these patents with Imperium.  If you find that any licensee has done so, you must determine whether it would have been practical for the licensees to have marked and whether Imperium made reasonable efforts to ensure that the particular licensee marked substantially all of their patented articles.  In determining whether Imperium made reasonable efforts, you should evaluate all of the efforts Imperium made to ensure compliance by its licensees.

If you find that there was a duty to mark and that either Imperium did not comply with its

duties to mark or to make reasonable efforts to ensure marking by its licensees after entering a

license with Imperium, you must only limit damages for the period during which Imperium did

not comply with the marking requirement.  However, failure to mark is not a requirement after the

complaint is filed—in this case, June 9, 2014.  Accordingly, you may not limit damages based on

the issue of marking from June 9, 2014 onward.


Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

**2.30    SPECIFIC INSTRUCTIONS: REASONABLE ROYALTY—DEFINITION**

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention.  A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place just before or about at the time when the infringing sales first began.  You have heard testimony in this case regarding a running royalty.  A running royalty is a royalty where the patent owner collects ongoing per-unit or percentage payments over a period of time.  In considering the nature of this "hypothetical negotiation," the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations.  However, you must assume that both parties believed the patent was valid and infringed.  In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been.  Your focus should be on what the parties' expectations would have been had they entered negotiations for royalties at the time that the infringing activity began.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.  You may consider expert opinions as to what the reasonable royalty should be.

In determining the reasonable royalty that would have resulted from the hypothetical negotiation, you may consider real world facts including the following to the extent they are helpful to you:

- Licenses or offers to license the patents-at-issue in this case;

- Licenses involving comparable patents;

- Whether the patent owner had an established policy of refusing to license the patent at issue;

- The relationship between the patent owner and alleged infringer, including whether or not they were competitors;

- The significance of the patented technology in promoting sales of the alleged infringer's products and earning it profit;

- Alternatives to the patented technology and advantages provided by the patented technology relative to the alternatives;

- The licensing history of the parties;

- Licensing practices in the relevant industry;

- The portion of the alleged infringer's profits that should be credited to the invention as distinguished from nonpatented features, improvement or contributions; and

- Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

In considering license agreements entered into by Imperium, you can consider the circumstances of each license in determining what weight to give it in determining the amount of a reasonable royalty.   For example, you may consider whether a particular license agreement included other patents or other property in addition to the patents-in-suit.   You may also consider whether the license was entered into while litigation was pending against the entity that entered into the license.   You may consider the posture and circumstances of such litigation, and you may consider that a desire to avoid the expense and inconvenience of litigation may influence a party's decision to enter into a license, as well as the amount paid for the license.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013); final jury instructions given in *Retractable Technologies Inc. et al. v. Becton, Dickinson and Co.,* case no. 2:07-cv-00250 (E.D. Tex. Nov. 6, 2009).

**2.31   DUTY TO DELIBERATE**

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong.  However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you.  If you request an exhibit, it will be provided to you.  Select your Foreperson, and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.  After you have reached your unanimous verdict, your foreperson is to fill in your answers to the questions on the verdict form.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to conduct your deliberations.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Oasis Research, LLC v. Carbonite, Inc. et al.,* case no. 4:10-cv-00435 (E.D. Tex. Mar. 22, 2013); jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013).

**APPENDIX A**

**Meaning of Claim Terms**

- The term "adjusting the overall system gain by adjusting the integration time" means adjusting the overall system gain by an amount as close to the determined amount as can be accomplished by adjusting the integration time.

- The term "average image luminance" means average preparatory image luminance.

- The term "differential interface" means an interface that uses two lines to communicate a signal.

- The term "an image processor connected to the CMOS image sensor to receive the signals output by the data interface circuit" means a processor connected to the CMOS image sensor for processing image data received from the single-ended and differential interfaces.

- The term "integration time" means the amount of time that a pixel is allowed to gather light before that pixel is read.

- The term "overall system gain" means the ratio of the output signal of the entire system to the input signal to entire system.

- The term "preparatory light for a predetermined preparatory duration" means preparatory light emitted for an amount of time that is determined before emitting the light.

- The term "sensor having a data interface circuit" means the CMOS image sensor has a circuit that communicates image data signals, but need not be restricted to communicating only image data.

- The term "single-ended interface" means an interface that uses a single line to communicate a signal.

All other terms in the asserted claims of the '884, '290, and '029 patents are to be given

their ordinary meaning as they would be understood by a person of ordinary skill in the art.


Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218.

## APPENDIX B

### Glossary of Patent Terms

- **Application**: The initial papers filed by the applicant with the United States Patent and Trademark Office (also called the Patent Office or PTO).

- **Assignment**: A transfer of patent rights to another called an "assignee" who, upon transfer, becomes the owner of the rights assigned.

- **Claims**: The numbered sentences appearing at the end of the patent that define the invention.  The words of the claims define the scope of the patent holder's exclusive rights during the life of the patent.  Claims can be independent or dependent.  An independent claim is self-contained.  A dependent claim refers back to an earlier claim and includes the requirements of the earlier claim.

- **Elements**: The required components of a system or the required steps of a method.  A system or method infringes a patent if it contains each and every requirement of a patent claim.

- **Examination**: Procedure before the PTO whereby a patent examiner reviews the filed patent application to determine if the claimed invention is patentable.

- **File wrapper**: Another term for the "prosecution history" defined later.

- **Limitation**: A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement."

- **License**: Permission to use or make the patented invention, or perform any of the other exclusive rights granted by the patent, which may be granted by a patent holder (or a prior licensee) in exchange for a fee called a "royalty" or other types of payment.

- **Office action**: Communication from the patent examiner regarding the patent application.

- **Ordinary skill in the art**: The level of experience, education, and/or training that those individuals who worked in the area of the invention ordinarily possessed at the time of the effective filing date of the patent application.

- **Patent**: A patent is an exclusive right granted by the PTO to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from the date the patent application was filed.  When the patent expires, the right to make, use, or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.  The patent is grated after examination by the PTO of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

- **Patent and Trademark Office (PTO)**: An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

- **Patent examiners**: Personnel employed by the PTO who review patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable.

- **Prior art**: Prior art is not art as one might generally understand the word art. Rather, prior art is a technical term relating to patents. In general, it includes things that existed before the claimed invention and might typically be a patent or a printed publication.

- **Prosecution history**: The written record of proceedings between the applicant and the PTO, including the original patent application and later communications.

- **Requirement**: A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

- **Specification**: The information that appears in the patent and concludes with one or more claims. The specification includes the written text and the drawings (if any). In the specification, the inventor should provide a description telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so, and what the inventor believed at the time of filing to be the best way of making the invention.

Authority: Jury instructions given in *Alexsam, Inc. v. Barnes & Noble, Inc., et al.,* case no. 2:13-cv-00003 (E.D. Tex.), D.I. 218; jury charge given in *Oasis Research, LLC v. Carbonite, Inc. et al.,* case no. 4:10-cv-00435 (E.D. Tex. Mar. 22, 2013); jury charge given in *Frito-Lay North America, Inc. v. Medallion Foods, Inc. et al.,* case no. 4:12-cv-00074-AM (E.D. Tex. Mar. 1, 2013).

Dated: January 15, 2016

Respectfully submitted,

/s/ *R. William Sigler*
Alan M. Fisch
*alan.fisch@fischllp.com*
R. William Sigler (*pro hac vice*)
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
*jeffrey.saltman@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
Tel: (202) 362-3500

Silvia Jordan (*pro hac vice*)
*silvia.jordan@fischllp.com*
FISCH SIGLER LLP
505 Eighth Avenue
12th Floor
New York, NY 10018
Tel: (212) 235-0440

David M. Saunders (*pro hac vice*)
*david.saunders@fischllp.com*
FISCH SIGLER LLP
96 North Third Street
Suite 260
San Jose, CA 95112
Tel: (650) 362-8200

*Attorneys for Imperium IP Holdings*
*(Cayman), Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 15, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Texas, Sherman Division, via the CM/ECF system, which will send a notice of filing to all counsel of record who have consented to service by electronic means.

*/s/ R. William Sigler*
R. William Sigler
