# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IMPERIUM IP HOLDINGS (CAYMAN), LTD. | § § § § § § § § § § § | |
| | | CIVIL ACTION No. 4:14-CV-371 |
| v. | | Judge Mazzant |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, AND SAMSUNG SEMICONDUCTOR, INC. | | |

## **MEMORANDUM OPINION**

Before the Court are issues relating to enhanced damages, issues regarding the Sony License Agreement, and the Court's rendering of final judgment.

Plaintiff filed suit against Defendants on June 9, 2014, asserting patent infringement (Dkt. #1). In mandatory disclosure on February 12, 2015, Defendants informed Plaintiff that Sony, among other companies, was a supplier of image sensors for Samsung's products (Dkt. #155, Ex. K). On March 9, 2015, Defendants further specified, in response to interrogatories, which products contained Sony image sensors (Dkt. #155, Ex. L). On April 2, 2015, Plaintiff produced to Defendants Imperium's 2013 Settlement and License Agreement with Sony Corporation ("Sony License Agreement") that concerns the patents-in-suit (Dkt. #155, Ex. B; Dkt. #169, Ex. 3).

September 9, 2015, marked the discovery deadline and the deadline to file dispositive motions (Dkt. #70 at p. 3). That same day, Plaintiff's damages expert, Michele Riley, called attention to Sony sensors in her expert report: "As Exhibit 6A – 6D shows, certain of these sensors were purchased by Samsung from Sony. I understand that Imperium is not accusing

1

those sensors of infringement in this case." (Dkt. #156, Ex. Q).  Also that same day, September 9, 2015, Plaintiff's technical expert, Dr. Cameron H.G. Wright, presented his infringement report (Dkt. #156, Ex. R).  This infringement report details, in part, the alleged infringement of Claim 14 of asserted U.S. Patent No. 7,092,029 ("the '029 Patent"), which includes, among other items, an image sensor (Dkt. #156, Ex. R at p. 191; Dkt. #1, Ex. C at col. 14).  In demonstrating "exemplary support" for this limitation of an image sensor, the report points to Defendants' supplemented response to interrogatories identifying image sensors used in Samsung products (Dkt. #156, Ex. R at p. 184; Ex. M).  Of particular note is that at least one of Dr. Wright's citations points to a product disclosure that lists, as the image sensors, only Sony image sensors (Dkt. #156, Ex. M at p. 4).

Defendants contended that they "did not know before September 9 that Imperium would rely on Sony sensors to prove infringement, but once they learned that this is what Imperium was doing, Samsung worked diligently to bring this issue promptly before the Court." (Dkt. #155 at p. 12).  Nearly eight weeks later, on November 3, 2015, Plaintiff filed a motion for leave to file summary judgment out-of-time, alleging that accused products containing Sony image sensors are licensed to the patents-in-suit under the Sony License Agreement (Dkt. #155 at p. 2).

On January 21, 2016, the Court denied Defendants' motion for leave to file summary judgment out-of-time (Dkt. #219).  In its Memorandum Opinion and Order, the Court stated

> Much of the information relied upon by Defendants to support its motion for summary judgment was known, or should have been known, by Defendants before September 9.  First, as Defendants explain, the accused Samsung-Sony products comprise almost half of the accused products in this lawsuit (Dkt. #155 at p. 3).  Second, Defendants were aware that the patents-in-suit include, at least as one limitation, "an image sensor coupled to a memory" (Dkt. #1, Ex. C at col. 14, ln. 3).  Third, Defendants had identified accused products that contain, as the only image sensor, a Sony image sensor (Dkt. #155 at p. 8).  Fourth, Defendants had access to the Sony License Agreement as of April 2, 2015 (Dkt. #169, Ex. 3).  Considering these factors, the Court finds that even if Plaintiff "obscured" the fact

> that it is relying upon Sony image sensors, Defendants could have been aware of the potential relevance of the Sony License regarding what it describes as almost half of the accused products long before September 9, 2015, such that the timing of the filing was in the reasonable control of Defendant. This tends to suggest that the current filing is not untimely due to "excusable neglect."

(Dkt #219 at p. 4). At the Pretrial conference, the Court discussed with parties the issue of the Sony License defense. The Court determined that issues related to the Sony License had not been briefed beyond the request to file summary judgment out-of-time, and the Court was, therefore, without a great delay in the proceedings, not in a position to determine whether Defendants had waived the Sony License as a defense or whether the Sony License even applied. The Court, therefore, determined that the issue would be taken up after trial (Trial Tr. 1/29/16 at 35:22-36:13).

Trial commenced on February 1, 2016, and continued until February 8, 2016, when the jury rendered a verdict finding Defendants infringed claims of the '029 Patent and the '884 Patent (Dkt. #252). In addition, the jury found the Defendants willfully infringed claims of the '029 Patent and the '884 Patent (Dkt. #252 at pp. 3, 8).

On February 18, 2016, the Court set forth a briefing schedule regarding enhanced damages and any remaining issues regarding the Sony License Agreement (Dkt. #254). On March 8, 2016, Defendants filed Defendant Samsung's Brief Regarding the Sony License and Enhanced Damages (Dkt. #277). On March 22, 2016, Plaintiff filed Imperium's Motion and Brief on the *Seagate* Objective Prong, Enhanced Damages, and Samsung's Sony Defense (Dkt. #280). On March 28, 2016, Defendants filed a reply brief (Dkt. #299). On April 4, 2016, Plaintiff filed a sur-reply (Dkt. #302). On April 6, 2016, Plaintiff filed a Corrected sur-reply on the *Seagate* Objective Prong, Enhanced Damages, and Samsung's Sony Defense (Dkt. #312).

On April 7, 2016, Defendants filed a Motion for Leave to File a Response to Plaintiff's "Corrected" Sur-Reply (Dkt. #313) and the responsive briefing (Dkt. #314). On April 25, 2016, Plaintiff filed a response to Defendants' Motion for Leave to File a Response to Plaintiff's "Corrected" Sur-Reply (Dkt. #324). On May 5, 2016, Defendants filed a reply (Dkt. #325). On May 16, 2016, Plaintiff filed a sur-reply (Dkt. #326).

On June 13, 2016, the Supreme Court returned a decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1925 (2016). The Supreme Court determined that the Federal Circuit's two-part test for enhanced damages was inconsistent with 35 U.S.C. § 284, abrogating *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007). *Id.*

*The Sony License*

Plaintiff argues that Defendants' Sony License Defense is barred under Rule 16 of the Federal Rules of Civil Procedure for lack of diligence in failing to timely disclose the theory. Defendants argue that Rule 8(c) rather than Rule 16, applies. Plaintiff contends that Defendants are incorrect that only Rule 8 applies and that the Rule 16 requirements for diligence and "good cause" still apply. Further, Plaintiff asserts that Defendants merely provided a boilerplate "license defense" and described a "MIPI-license" theory in their interrogatory responses and therefore did not comply with Rules 37(c) or 26(e) of the Federal Rules of Civil Procedure (Dkt. #302 at p. 8).

Even if, for the sake of argument, only Rule 8 applies, the Court finds that Defendants waived asserting the Sony License as a defense. "Generally, under Rule 8(c) affirmative defenses must be raised in the first responsive pleading." *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009). However, "[a]n affirmative defense is not waived if the defendant 'raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its

4

ability to respond.'" *Id.* (citing *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 856 (5th Cir. 1983)). The court is to "look at the overall context of the litigation," and the Fifth Circuit has found "no waiver where no evidence of prejudice exists and sufficient time to respond to the defense remains before trial." *Id.* at 577. Defendants cite *Pasco*, but in *Pasco*, the defendant failed to raise a defense in its first responsive pleading but raised the new affirmative defense in its motion for summary judgment, two months before discovery was due, and the court noted that it was a special circumstance where the relevant law on qualified immunity and the Fourth Amendment was not clearly settled prior to a Supreme Court decision that was passed down. *Pasco*, 566 F.3d at 578. In *Allied Chemical*, defendant failed to raise a defense in its first response but asserted the defense in its motion for summary judgment. 695 F.2d at 855-56.

Unlike cited cases where defendants raised the new defense in the motion for summary judgment, Defendants did not raise the Sony License defense until well beyond the deadline for summary judgment. As the Court has previously noted, Defendants state that they only knew of the issue as of September 9, 2015 and then diligently worked to bring the issue promptly before the Court but did not do so until November 3, 2015 (Dkt. #219 at p. 2). Defendants have previously presented evidence that they sent e-mails regarding the Sony License to Plaintiff's counsel on September 24, 2015 (Dkt. #155, Ex. C).

The Court finds that evidence of prejudice existed in that Defendants chose not to raise the defense, even when they admit to becoming aware of the issue, and did not supplement interrogatory responses with the Sony License information. Sufficient time may have existed, in theory, between the date Defendants raised the issue and the day of trial, but practically, there was not sufficient time to respond to the defense, to take discovery on the specific issue, to file briefings with the Court on the issue, and to have a hearing on the issue, if necessary.

Defendants may have given a boilerplate, general license defense in its answer, but even in supplementing its responses to interrogatories Defendants only gave an indication of asserting a license to one or more asserted claims of the patents-in-suit per the terms of its membership in the MIPI Alliance (Dkt. #277, Ex. I at pp. 38-42). If anything, Defendants' decision to supplement their answer to interrogatory regarding license defenses on July 13, 2015, and September 7, 2015, after receiving the Sony License Agreement on April 2, 2015, indicated an active intention *not* to assert the Sony License.

Claim 1 of the '029 Patent requires "capturing a preparatory image while generating the preparatory light wherein the preparatory image is represented by preparatory image data." According to Defendants' interpretation of the '029 Patent, not reliant on any of Plaintiff's views, the '029 Patent "teaches that an image sensor is the specific component that captures this preparatory image." (Dkt #277 at p. 2). Defendants have never presented evidence as to why, given this understanding of the patent and knowledge of their own products' usage of Sony image sensors, Defendants did not assert that they may be entitled to assert the Sony License, particularly if Plaintiff agreed to Defendants' understanding of the patents-in-suit. After all, Defendants generally pleaded a boilerplate license defense and presumptively stated that "Samsung may be entitled to a license" with respect to its membership in the MIPI Alliance.

The Court is unconvinced by Defendants' assertion that Plaintiff concealed its reliance on Sony image sensors throughout the litigation. Plaintiff maintains that it did not rely on Sony sensors and that its theory regarding the claims allows that "capturing a preparatory image" limitation can be performed by components other than an image sensor, such as an image processor (Dkt. #302 at p. 9). Plaintiff contends that it is under this understanding that it listed a generic CMOS image sensor rather than specific image signal processors in claim charts (Dkt.

#302 at p. 8). Defendants are critical of Dr. Wright's deposition testimony that Claim 1 requires a digital imaging sensor, but consistent with Plaintiff's stated theory of infringement, an imaging sensor would likely be present in an accused product but need not be used to meet the claim limitation of "capturing a preparatory image." The fact that Defendants disagree about the way in which the claim limitation should be read, as necessitating that an image sensor be the only component that can practice "capturing a preparatory image," does not demonstrate concealment or misconduct on Plaintiff's part. In short, Plaintiff's theory of infringement due to image processors rather than image sensors gives an adequate basis for Plaintiff's actions, Dr. Wright's testimony, and continued insistence that it does not depend upon Sony image sensors to meet the claim limitations, while Defendants' theory does not explain their decision not to assert the Sony License until November 3, 2015. The Court, therefore, determines that Defendants waived their defense based on the Sony License.

Finally, Defendants' assertion that the verdict triggered coverage under a second definition of "Covered Third Party Products" is unconvincing, as such logic would allow parties to wait until after a verdict, after the dust has cleared, to bring new disputes that were rightly the subject of the litigation.

*Enhanced Damages*

At the time of trial, proof of willful infringement required "clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and this "objectively-defined risk … was either known or so obvious that it should have been known." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). The Court instructed the jury based on the law at the then-applicable willfulness standard:

7

In this case, Imperium contends both that Samsung infringed the asserted claims of the '884, '290, and '029 patents, and, further, that Samsung infringed willfully. If you find that Samsung infringed the asserted claims of the patents-in-suit, then you must go on to address the additional issue of whether or not this infringement was willful.

Willfulness requires you to determine by clear and convincing evidence that Samsung acted recklessly. To prove that Samsung acted recklessly, Imperium must persuade you that Samsung actually knew of the risk of infringement, or that the risk of infringement was so clear from the circumstances that Samsung should have known of the risk. To determine whether Samsung had this state of mind, consider all facts which may include, but are not limited, to:

1. Whether or not Samsung acted in accordance with the standards of commerce for its industry;
2. Whether or not Samsung intentionally copied a product that is covered by the patents-in-suit;
3. Whether or not there is a reasonable basis to believe that Samsung did not infringe or had a reasonable defense to infringement;
4. Whether or not Samsung made a good-faith effort to avoid infringing the patents-in-suit, for example, whether Samsung attempted to design around the patents; and
5. Whether or not Samsung tried to cover up its infringement.

(Dkt. #250 at pp. 15-16). The jury, in its verdict, found that Imperium had proven by clear and convincing evidence that Samsung willfully infringed a claim of the '884 Patent and a claim of the '029 Patent (Dkt. #252 at pp. 3, 8).

After the jury returned a verdict, but before this final judgment, the Supreme Court decided, on June 13, 2016, *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1925 (2016). The Supreme Court determined that the Federal Circuit's two-part test for enhanced damages was inconsistent with 35 U.S.C. § 284, abrogating *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007). *Id.* The Supreme Court explained that "Section 284 gives district courts discretion in meting out enhanced damages. It 'commits the determination' whether enhanced damages are appropriate 'to the discretion of the district court' and 'that

decision is to be reviewed on appeal for abuse of discretion.'" *Id.* at 1934 (quoting *Highmark Inc. v. Allcare Health Mgmt. Sys, Inc.*, 134 S. Ct. 1744, 1748 (2014)). "In applying this discretion, district courts are 'to be guided by [the] sound legal principles' developed over nearly two centuries of application and interpretation of the Patent Act." *Id.* (alternation in original) (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). Enhanced damages are "not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior. The sort of conduct warranting enhanced damages has been variously described in … cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant or—indeed—characteristic of a pirate." *Id.* at 1932.

In *Halo*, the Supreme Court rejected the *Seagate* approach, holding that the objective reasonableness of the infringer's litigation defense does not preclude a finding of "willful misconduct." *Id.* Rather, "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* at 1933. "As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount. Section 284 permits district courts to exercise their discretion in a manner free from the inelastic constraints of the *Seagate* test." *Id.* at 1933-34. Further, the Supreme Court determined that enhanced damages should be governed by a preponderance of the evidence standard rather than the clear and convincing standard under *Seagate*. *Id.* at 1934.

In accordance with the *Halo* ruling, the Supreme Court vacated and remanded *Innovention Toys, LLC v. MGA Entertainment, Inc.*, 136 S.Ct. 2483, 2484 (2016). In accordance with *Halo*, the Federal Circuit addressed the purposes of the remand to the district court, given

circumstances in which the jury had found, under the *Seagate* standard, that the defendants willfully infringed by clear and convincing evidence:

> The task on remand is limited in an important respect. There is no basis for a new trial on "willful misconduct," which is a sufficient predicate, under *Halo*, to allow the district court to exercise its discretion to decide whether punishment is warranted in the form of enhanced damages. *Halo*, 136 S. Ct. at 1934 ("such punishment should generally be reserved for egregious cases typified by willful misconduct"). On the record in this case, including the jury instructions . . ., the predicate of willful misconduct is established by the jury's finding that MGA was subjectively willful under the second part of the *Seagate* standard. The jury made that finding under the clear-and-convincing-evidence standard, which is more demanding than needed. *See Halo*, 136 S. Ct. at 1934. The Supreme Court in *Halo* did not question our precedents on jury determination of that issue. *See WBIP, LLC v. Kohler Co.*, Nos. 2015-1083, -1044, 2016 WL 3902668, at *15 (Fed. Cir. July 19, 2016). Nor did it doubt that a finding favorable to the patentee on the second part of the *Seagate* standard suffices to establish the subjectively willful misconduct that, when present, moves the enhancement inquiry to the stage at which the district court exercises its discretion. The remand in this case, therefore, is for the district court to exercise its discretion in accordance with *Halo*, including the emphasis on egregiousness; willful misconduct has already been established by a verdict that *Halo* does not warrant disturbing. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, Nos. 2013-1472, -1656, slip op. at 20-21 (Fed. Cir. Aug. 5, 2016).

2016 WL 4151240 at *2 (Fed. Cir. 2016). In *WBIP, LLC v. Kohler Co.*, the Federal Circuit stated that "[w]e do not interpret *Halo* as changing the established law that the factual components of the willfulness question should be resolved by the jury." 2016 WL 3902668, at *15 (Fed. Cir. 2016) (citing *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1250 (Fed. Cir. 1989) ("Absent sufficient basis for directing the verdict, Richardson has the right of jury determination of this factual question. Willfulness of behavior is a classical jury question of intent. When trial is had to a jury, the issue should be decided by the jury.")).

As in *Innovention*, the Court determines that, due to the record in this case, including the jury's instructions, the predicate of willful misconduct was established by the jury's findings that

Defendants were subjectively willful under the second part of the *Seagate* standard. The Court, therefore, moves the enhancement inquiry to the stage at which the Court exercises its discretion.

In exercising its discretion, the Court has reviewed the record, and for general guidance considered the non-exclusive factors the Federal Circuit has previously provided to assist in this discretionary determination. *Read Corp. v. Portec Inc.*, 970 F.2d 816 (Fed. Cir. 1992), abrogated in part on other grounds by *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc). The non-exclusive *Read* factors in deciding whether to enhance damages and the amount of the enhancement include the following: (1) whether the infringer deliberately copied the ideas of another; (2) whether the infringer investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of the defendant's misconduct; (7) remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal its misconduct. *Id.* at 827. An award need not rest on any particular factor, and not all relevant factors need to weigh in favor of an enhanced award. *See SRI Int'l., Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1469 (Fed. Cir. 1997). While the *Read* factors remain helpful to the Court's execution of its discretion, an analysis focused on "egregious infringement behavior" is the touchstone for determining an award of enhanced damages rather than a more rigid, mechanical assessment.

The Court finds that enhancement of damages is appropriate in this case. In weighing potentially egregious behavior, the Court notes testimony regarding allegations of Defendants' copying. Mr. Melfi testified that during his time working at ESS (prior to investment from Plaintiff), Defendants, unique among its customers, sought information on how ESS made its

camera (Trial Tr. 2/1/2016 PM at 71:14-75:4). Mr. Melfi testified that Samsung asked specifically about anti-flicker and flash technology, requested source code, and, in regard to higher megapixel cameras, control registers, signals, and the circuitry for the interface (Trial Tr. 2/1/2016 PM at 73:22-74:17; 78:5-79:5). Further, Mr. Melfi testified that shortly before winding down business with ESS, Samsung used information gleaned from a training to duplicate ESS' camera testing lab (Trial Tr. 2/1/2016 PM at 79:6-22).

In addition, the Court notes that Mr. Bang testified, by way of videotaped depositions regarding Defendants' tracking of Imperium's patent portfolio, that Defendants did not perform an analysis of Plaintiff's patents after 2011 and did not monitor Plaintiff's previous litigation involving the patents-in-suit. Mr. Lee testified that in 2011, Defendants dropped pursuit of Plaintiff's patents. However, evidence produced at trial indicated that this testimony was demonstratively false and not worthy of belief (Trial Tr. 2/5/2016 PM at 111:14-112:16). Evidence indicates Defendants did track and attempt to obtain, despite testimony otherwise, Plaintiff's patents for years before this lawsuit. Samsung also failed to offer any evidence at trial that it had independently developed and/or acquired the camera technologies at issue in this case.

Despite knowing of Plaintiff's patents since at least April 2011, Defendants never undertook any serious investigation to form a good-faith belief as to non-infringement or invalidity. Instead, Defendants used a patent broker to try and purchase the patents from Plaintiff without revealing their identity.

Defendants made multiple material misrepresentations under oath. In their sworn response to Interrogatory No. 7, Defendants misrepresented that they only knew of Plaintiff's patents when the case started in June 2014. This response remained unchanged until after depositions and other discovery showed this to be incorrect. During trial, the Court found

Defendants' witnesses, Mr. Bang and Mr. Lee, gave false testimony, including testimony that Defendants proffered to the jury.  Defendants misrepresented key facts bearing on infringement and willfulness, including whether Defendants were tracking Plaintiff's patents in the first Imperium case, the extent of their discussions about obtaining Plaintiff's patents, and Defendants' alleged pre-suit analysis of them.  As a result of this conduct, the Court sanctioned Defendants at trial, based in part on these misrepresentations.

Defendants also failed to produce relevant documents. Defendants knew at least by July 15, 2015, about the need to produce e-mails and other documents relating to Mr. Kaler. Plaintiff had specifically requested such documents.  Defendants apparently never searched for nor produced any such documents until the fourth day of trial at 2:19 a.m.  Defendants then only produced documents found on Mr. Kaler's laptop during witness preparations—not any documents from Defendants' files. Defendants searched their own files for such Kaler documents only after Plaintiff and the Court had raised the issue of sanctions. Defendants then provided on the fifth day of trial a February 4 declaration by Mr. Bang and a handful of hard-copy documents.  The time to produce these Kaler documents was during discovery, not during trial.

In view of evidence of Defendants' conduct at the time of accused infringement and after reviewing the *Read* factors, the Court finds that enhancement is warranted.  Enhancement is appropriate here to address Defendants' willful infringement and conduct. Enhancement of damages by three times the jury verdict of $6,970,380.50 would result in a total amount of $20,911,141.50. The Court enhances damages to the maximum extent allowable under § 284 given the totality of the circumstances.  The Court, therefore, exercises its discretion, given the

nature and circumstances particular to this case, and concludes it is appropriate to enhance the damages by trebling the jury award.

**SIGNED this 24th day of August, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE