# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IMPERIUM IP HOLDINGS (CAYMAN), LTD. | § § § § | |
| v. | § § | Civil Action No. 4:14-CV-371 |
| | § | Judge Mazzant |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, and SAMSUNG SEMICONDUCTOR, INC. | § § § § § § § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Imperium IP Holdings (Cayman), Ltd.'s ("Imperium")

Motion for § 285 Attorneys' Fees and Non-Taxable Costs (Dkt. #363). After reviewing the

relevant pleadings, the Court grants in part and denies in part Imperium's motion.

## BACKGROUND

On June 9, 2014, Imperium filed the instant action against Defendants, alleging

infringement of United States Patent Nos. 6,271,884 (the "'884 Patent), 7,092,029 (the "'029

Patent"), and 6,836,290 (the "'290 Patent"). On February 8, 2016, the jury returned a verdict

finding the following: (1) Defendants infringed Claims 1, 5, 14, and 17 of the '884 Patent; (2)

Defendants infringed Claims 1, 6, and 7 of the '029 Patent; (3) Defendants willfully infringed the

patents-in-suit; and (4) Claim 10 of the '290 Patent was invalid for obviousness (Dkt. #253).

The jury awarded $4,840,772 in damages for infringement of the '884 Patent and $2,129,608.50

in damages for infringement of the '029 Patent (Dkt. #253). The jury's award represents an

implied royalty rate of four cents per product for the '884 Patent and two cents per product for

the '029 Patent.  On August 24, 2016, the Court awarded enhanced damages for willful

infringement and entered final judgment (Dkt. #329; Dkt. #330).

On May 11, 2017, Imperium filed the present motion for attorneys' fees and non-taxable

costs (Dkt. #363).  On May 26, 2017, Defendants filed a response (Dkt. #372).  On June 5, 2017,

Imperium filed a reply (Dkt. #381).  On June 13, 2017, Defendants filed a sur-reply (Dkt. #387).

## LEGAL STANDARD

Section 285 of Title 35 of the United States Code provides, "The court in exceptional

cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  "When

deciding whether to award attorney fees under § 285, a district court engages in a two-step

inquiry."  *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012).  The court

first determines whether the case is exceptional and, if so, whether an award of attorney fees is

justified.  *Id.* at 915–16 (citations omitted).  The Supreme Court has defined "an 'exceptional'

case [as] simply one that stands out from others with respect to the substantive strength of a

party's litigating position (considering both the governing law and the facts of the case) or the

unreasonable manner in which the case was litigated."  *Octane Fitness LLC v. Icon Health &

Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014).

District courts should consider the "totality of the circumstances" and use their discretion

to determine on a case-by-case basis whether a case is "exceptional."  *Id.*  A nonexclusive list of

factors includes "frivolousness, motivation, objective unreasonableness (both in the factual and

legal components of the case) and the need in particular circumstances to advance considerations

of compensation and deterrence."  *Id.* at n.6.  Cases that may merit an award of attorney fees

include "the rare case in which a party's unreasonable conduct—while not necessarily

independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees" or "a

case presenting either subjective bad faith or exceptionally meritless claims." *Id.* at 1757. A party seeking attorney fees under § 285 must prove the merits of their contentions by a preponderance of the evidence. *Id.* at 1758.

## ANALYSIS

A. Prevailing Party

Defendants contend they are a prevailing party as the jury in this case and the U.S. Patent Trial and Appeal Board in a parallel proceeding found two of the three patents-in-suit invalid. Defendants further contend they prevailed because the Patent Office granted ex parte reexamination of the third patent-in-suit. Imperium counters that it is the prevailing party because it obtained an infringement judgment for damages.

A plaintiff may be considered a prevailing party for attorney's fees purposes "if they succeed on any significant issue which achieve some of the benefit the [party] sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). This occurs when a plaintiff "obtain[s] an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." *Id.* at 111 (citations omitted). "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111–12. There can be only one prevailing party, but a "party is not required . . . to prevail on all claims in order to qualify." *Shum v. Intel Corp.*, 629 F.3d 1360, 1367–68 (Fed. Cir. 2010).

Because there can be only one prevailing party, the Court finds that Imperium is the "prevailing party" in this case. Imperium was successful in proving Defendants infringed asserted claims in the '884 and '029 Patents. The jury awarded Imperium $4,840,772 in

damages for infringement of the '884 Patent and $2,129,608.50 in damages for infringement of the '029 Patent. Following trial, the Court trebled the jury's damages award for Defendants' willful infringement. Imperium's damages judgment against Defendants "materially alters the legal relationship" between the parties. This is true because "[a] judgment for damages in any amount . . . modifies [Defendants'] behavior for [Imperium's] benefit by forcing [Defendants'] to pay an amount of money [they] otherwise would not pay." *Farrar*, 506 U.S. at 113. While the jury found the '290 Patent invalid, the Court recognizes that Imperium is not required to succeed on every claim to be the prevailing party. *Shum*, 629 F.3d at 1367–68. Further, the Court is unconvinced that the Patent Office's grant of ex parte reexamination for the '884 Patent has any significant bearing on the Court's determination of the prevailing party.

Accordingly, Imperium is a prevailing party and thus is eligible for its attorney's fees.

B. Exceptional Case

After considering the totality of the circumstances, the Court finds this case is "exceptional" based on the unreasonable conduct of Defendants.

First, there was ample evidence at trial of Defendants' willful infringement that warranted the Court's enhancement of damages. For instance, Mr. Melfi testified regarding allegations of Defendants' copying. Mr. Melfi testified that during his time working for ESS,[1] Defendants sought information on how ESS made its camera and how to duplicate ESS's camera testing lab. He further testified that Defendants asked specifically about the patented technology and requested source code. The evidence showed that Defendants used obtained information to duplicate ESS's camera testing lab. In addition, Mr. Bang, who testified for Defendants, stated Defendants did not follow Imperium's patents after 2011 or monitor Imperium's previous litigation regarding the patents-in-suit. Mr. Lee testified that in 2011, Defendants dropped

---

[1] ESS is short for ESS Technology, Inc., an entity that assigned its rights in the patents-in-suit to Imperium.

pursuit of the Imperium's patents. However, evidence produced at trial indicated the testimony of Mr. Lee and Mr. Bang was untrue. In fact, Defendants knew of Imperium's patents for years, tracked those patents in other litigation, and tried to obtain those patents through a patent broker before this case began. Despite knowing of Imperium's patents since at least 2011, Defendants never investigated to form a good faith belief as to non-infringement and invalidity. Instead, the record indicates that Defendants used a patent broker to try to purchase the patents-in-suit without revealing their identity.

A finding of willful infringement for purposes of enhanced damages does not require a finding that a case is exceptional under § 285. *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1582 (Fed. Cir. 1992). Nevertheless, "the willfulness of the infringement by the accused infringer may be a sufficient basis in a particular case for finding the case 'exceptional' for purposes of awarding attorney fees to the prevailing patent owner." *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004); *see Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1321 (Fed. Cir. 2006) ("Exceptional cases usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct . . . .").

Second, Defendants made multiple material misrepresentations under oath and in their pleadings. At the beginning of the case, Imperium points out that Defendants represented in its September 2014 answer that it did not know of Imperium's patents until the June 2014 filing of this lawsuit. Later, in an interrogatory response, Defendants again represented that they did not know of Imperium's patents until June 2014. Defendants' responses remained unchanged after deposition and other discovery showed these statements to be incorrect. During trial, Mr. Bang and Mr. Lee gave false testimony regarding Defendants' knowledge of the patents-in-suit.

Further, Defendants misrepresented key facts bearing on infringement and willfulness, including the fact that Defendants were tracking Imperium's patents in an earlier litigation, the extent of Defendants' discussions about obtaining Imperium's patents, and Defendants' alleged pre-suit analysis of them.

Third, Defendants failed to produce relevant documents timely. During discovery, around July 2015, Imperium specifically requested emails or other documents relating to discussions that Mr. Kaler had with counsel for Imperium in 2011, 2012, 2013, and 2014. Apparently, Defendants never searched for any such documents until the fourth day of trial at 2:19 a.m. on February 4, 2016, when Defendants finally produced the requested documents. Defendants, however, produced only documents found on Mr. Kaler's laptop, omitted any requested documents from Defendants' own files. Only after Imperium and the Court raised the issue of sanctions did Defendants search their own files for Kaler-related documents. On the fifth day of trial, Defendants then produced a handful of hard-copy documents along with an affidavit from Mr. Bang. This affidavit revealed these communications and documents between Defendants and Mr. Kaler were kept on Mr. Bang's computer in a separate folder titled, "Imperium."

Last, Defendants have continued to infringe the '884 and '029 Patents—after the jury found infringement, after the Court entered judgment, after the Court enhanced damages. The Court considers Defendants' continued infringement to be unreasonable, deliberate and willful in nature, especially in light of the Court's orders and the jury's verdict. *Affinity Labs of Tex., LLC v. BMW N. Am., LLC*, 783 F. Supp. 2d 891, 899 (E.D. Tex. 2011) ("Following a jury verdict and entry of judgment of infringement and no invalidity, a defendant's continued infringement will be willful absent very unusual circumstances.").

It should be noted that none of Defendants' conduct in isolation makes this case exceptional. However, when a party does all of these things mentioned above and continues to infringe the patents-in-suit, the Court can only conclude this case is exceptional. Accordingly, the Court awards Imperium its attorney's fees incurred during this litigation.

C. Reasonableness of the Fee Request

"[T]he awarding of attorney fees pursuant to 35 U.S.C. § 285 is unique to patent law and therefore subject to Federal Circuit law." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343 (Fed. Cir. 2001). The Federal Circuit has "approv[ed] of use of the lodestar method in calculating an award of § 285 attorneys' fees." *Innovention Toys, LLC v. MGA Entm't, Inc.*, No. 07-6510, 2014 WL 1276346, at *2 (E.D. La. March 27, 2014) (citing *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1982))). Therefore, the Court will apply the two-step lodestar method.

The Court first calculates the "lodestar" by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). The relevant legal community is the community where the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

The party seeking reimbursement of attorney's fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as

evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id.* The hours remaining are those reasonably expended. *Id.* There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

After calculating the lodestar, the Court then considers whether the circumstances of the particular case warrant an upward or downward lodestar adjustment. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). In making any lodestar adjustment, the Court looks to twelve *Johnson* factors. *Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) ("(1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.")).

Here, Imperium asks the Court to award it $6,950,000 in attorney's fees and $738,079.23 in non-taxable costs and expenses for litigating this case. In support of its attorney's fee request, Imperium provides the affidavit of its lead counsel, Mr. Alan Fisch (Dkt. #363, Exhibit 6). Mr. Fisch's affidavit does not give the Court enough information to determine the reasonableness of Imperium's fair estimate of attorney's fees. Particularly, Imperium has not provided the Court with the number of hours Imperium's attorneys spent on this case. *Watkins v. Fordice*, 7 F.3d at

457. Without this information, the Court cannot calculate the lodestar. Before granting attorney's fees for a specific amount, the Court orders Imperium to submit documentation, that indicates the hours and billing rates for all legal assistants, associates, and partners who worked on this case.[2] *See* Fed. R. Civ. P. 54(d).

The Court finds Imperium is entitled to its non-taxable costs or expenses. The Federal Circuit interprets § 285 to "include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." *Mathis*, 857 F.2d at 757 (quoting *Central Soya, Inc. v. Geo. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983)). Nevertheless, the Court further finds Imperium may not recover its expert fees. "Section 285 does not include shifting of expert fees . . . ." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994). A district court may, however, "invoke its inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute." *Takeda Chem. Indus., Ltd. v. MylanLabs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008). "The use of this inherent power is reserved for cases with 'a finding of fraud or abuse of the judicial process.'" *Id.* (quoting *Amsted Indus.*, 23 F.3d at 378). The Court elects not to impose sanctions in the form of Imperium's expert fees. Imperium has made no evidentiary showing that Defendants committed fraud or abused the judicial process to warrant such a sanction. *See MarcTec, LLC*, 664 F.3d at 921 ("[N]ot every case that qualifies as exceptional under § 285 will also qualify for sanctions under the court's inherent power."). Section 285 and the Court's award of attorney's fees is adequate to compensate Imperium for the circumstances of this case. Therefore, the Court reduces Imperium's requested non-taxable costs by $156,397.79.

---

[2] The Court recognizes that Imperium offered to provide the Court with additional documentation on the particular hours and work performed by each Imperium attorney (Dkt. #363 at p. 10).

**CONCLUSION**

It is therefore **ORDERED** that Imperium IP Holdings (Cayman), Ltd.'s Motion for § 285 Attorneys' Fees and Non-Taxable Costs (Dkt. #363) is **GRANTED IN PART** and **DENIED IN PART**. The Court awards Imperium $581,681.44 in non-taxable costs or expenses. To determine the amount of attorney's fees awarded to Imperium, the Court **ORDERS** Imperium to submit to the Court within seven days of this Order documentation that indicates the hours and billing rates for all legal assistants, associates, and partners who worked on this case.

**SIGNED this 13th day of September, 2017.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE