# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| IMPERIUM IP HOLDINGS (CAYMAN), LTD. § § § § v. § § SAMSUNG ELECTRONICS CO., LTD., § SAMSUNG ELECTRONICS AMERICA, § INC., SAMSUNG § TELECOMMUNICATIONS AMERICA, § LLC, and SAMSUNG SEMICONDUCTOR, § INC. § § | Civil Action No. 4:14-CV-371 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Imperium IP Holdings (Cayman) Ltd.'s ("Imperium") Motion on the Appropriate Ongoing Royalty (Dkt. #380). After reviewing the relevant pleadings, the Court grants in part and denies in part Imperium's motion.

## BACKGROUND

On June 9, 2014, Imperium filed the instant action against Defendants, alleging infringement of United States Patent Nos. 6,271,884 (the "'884 Patent), 7,092,029 (the "'029 Patent"), and 6,836,290 (the "'290 Patent"). On February 8, 2016, the jury returned a verdict finding the following: (1) Defendants infringed Claims 1, 5, 14, and 17 of the '884 Patent; (2) Defendants infringed Claims 1, 6, and 7 of the '029 Patent; (3) Defendants willfully infringed the patents-in-suit; and (4) Claim 10 of the '290 Patent was invalid for obviousness (Dkt. #253). The jury awarded $4,840,772 in damages for infringement of the '884 Patent and $2,129,608.50 in damages for infringement of the '029 Patent (Dkt. #253). The jury's award represents an implied royalty rate of four cents per product for the '884 Patent and two cents per product for the '029 Patent. On August 24, 2016, the Court awarded enhanced damages for willful

infringement and entered final judgment (Dkt. #329; Dkt. #330). The Court also imposed an ongoing royalty in favor of Imperium and ordered the parties to negotiate the ongoing royalty rate and the products covered by that rate. The parties' discussions reached an impasse. Since the parties were unable to resolve the issue of ongoing royalties themselves, the Court finds it proper to address the issue now.

On June 2, 2017, Imperium filed the present motion (Dkt. #380). On June 9, 2017, Defendants filed a response (Dkt. #385). On June 14, 2017, Imperium filed a reply (Dkt. #390). On June 19, 2017, Defendants filed a sur-reply (Dkt. #392).

## LEGAL STANDARD

Upon a finding of infringement for a patentee, courts have jurisdiction to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The Federal Circuit has clarified that in some cases, where an injunction is inappropriate, a court may decide to award future royalties to be paid in light of post-judgment infringement. *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007); *see Creative Internet Advert. Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 850 (E.D. Tex. 2009). The Federal Circuit has also given the district court "broad discretion" in matters concerning an ongoing royalty rate. *See Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1378 (Fed. Cir. 2010).

## ANALYSIS

Imperium asserts it is entitled to an ongoing royalty rate for post-judgment infringement at the trebled rates the Court imposed for any products found to infringe that were no more than colorable variations of infringing products. Specifically, Imperium seeks an ongoing royalty rate of twelve cents per product for the '884 Patent and six cents per product for the '029 Patent.

Defendants contend the appropriate ongoing royalty rate should be 1.3 cents per product for the '884 Patent and 0.3 cents per product for the '029 Patent. Defendants reduced the implied jury rate for the '884 Patent by 67% because the relevant claims of '884 Patent are now subject to reexamination by the Patent Office and may be found invalid. Defendants also reduced the implied jury rate for the '029 Patent by 85% because the Patent Trial and Appeal Board ("PTAB") found the relevant claims of the '029 Patent to be invalid.

The starting point for the Court's calculation of an appropriate ongoing royalty rate is the rate determined by the jury for pre-verdict infringement.[1] Here, the jury determined a reasonable royalty rate of four cents per product for the '884 Patent and two cents per product for the '029 Patent. The Court will look mainly to any change in the bargaining positions of the parties and other economic circumstances occurring between the jury's hypothetical negotiation and a negotiation conducted after the verdict. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1343 (Fed. Cir. 2012). The burden is on Imperium to show that it is entitled to a royalty rate in excess of the rate initially determined by the jury. *Creative Internet*, 674 F. Supp. 2d at 855.

Imperium argues two changed circumstances warrant an upward adjustment of the jury-determined royalty rate. First, Imperium argues in a post-verdict hypothetical negotiation, it would be in a stronger position to negotiate with Defendants than at the time of the hypothetical negotiation in 2007. Imperium points to $22.8 million it has received in licensing fees for its patents in 2013. Imperium states these licensing fees prove that the patented technology is more of a commercial success today than it was at the time of the hypothetical negotiation in 2007.

---

[1] Some courts begin the analysis of an ongoing royalty rate by turning to the factors outlined in *Georgia–Pac. Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). Because the parties did not discuss those factors in the briefing, the Court will not analyze those factors. Instead, the Court will look mainly to the purported changes in bargaining position and economic circumstances to guide its analysis of the proper ongoing royalty rate.

Defendants argue the same 2013 licenses were already accounted for in the jury's verdict and thus cannot support an upward modification of the jury-determined royalty rate.

The Court agrees with Imperium's characterization of the 2013 licensing fees. In deciding the royalty rate for post-trial infringement, the Court can properly consider any new evidence that was not before the jury and any changed circumstances between the hypothetical negotiation occurring in 2007 and a hypothetical negotiation that would occur now after the judgment. *Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 647 (E.D. Tex. 2011), *affd sub nom. Mondis Tech. Ltd. v. Innolux Corp.*, 530 Fed. App'x. 959 (Fed. Cir. 2013). Although the jury did consider the 2013 licensing fees during trial, this does not change the fact the evidence may be weighed differently in a hypothetical negotiation occurring today than one in 2007. For example, the patented technology today is more of a commercial success than in the 2007, which is evidenced by the $22.8 million Imperium has received in licensing fees. This would increase Imperium's bargaining position in a 2017 hypothetical negotiation. However, the Court must balance Imperium's increased bargaining position with a December 1, 2016 PTAB decision that invalidated every claim the jury found Defendants had infringed in the '029 Patent. Taking all of these circumstances together, Imperium would have a stronger bargaining position with respect to the '884 Patent[2] but not with the '029 Patent.

Second, Imperium urges the Court to enhance damages for Defendants continued willful infringement based on several of the factors set out in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992). Imperium argues the jury's verdict did not include damages for Defendants' willful infringement. Thus, Imperium contends enhancement for Defendants'

---

[2] Despite Defendants' arguments to the contrary, the Court does not consider the Patent Office's reexamination of the '884 Patent to be compelling evidence of a changed circumstance.

continued willful infringement is proper in the ongoing royalty context when using the jury's non-willfulness rate as a starting point. The Court agrees.

A court may, in its discretion, enhance damages up to three times when there is a finding of willful infringement or bad-faith on the part of the infringing party. 35 U.S.C. § 284; *Halo Elecs. Inc. v. Pulse Elecs. Inc.*, 136 S. Ct. 1923, 1934 (2016). Here, it is undisputed that, since the jury verdict, Defendants have continued to infringe the patents-in-suit. "Following a jury verdict and entry of judgment of infringement and no invalidity, a defendant's continued infringement will be willful absent very unusual circumstances." *Affinity Labs of Tex., LLC v. BMW N. Am., LLC*, 783 F. Supp. 2d 891, 899 (E.D. Tex. 2011). The Court must determine whether the implied royalty rate should be enhanced to account for Defendants' ongoing willful infringement.

The *Read* factors provide guidance in determining whether and in what amount damages should be enhanced. These factors include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) any remedial action taken by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct. *Read*, 970 F.2d at 827. Many of these factors, however, are not well-suited for analyzing future willful infringement. *Mondis Tech.*, 822 F. Supp. 2d at 652. Therefore, the Court will consider those factors it finds applicable, and the Court will also consider the egregiousness of Defendants' conduct based on all of the facts and circumstances. *Read*, 970 F.2d at 826.

The Court has twice applied the *Read* factors to this case for Defendants' egregious conduct, resulting in a trebling of the royalty rate to twelve cents per product for the '884 Patent and six cents per product for the '029 Patent. In this matter, the Court does not find that trebling the jury-determined rate to be appropriate. Imperium has not addressed any circumstances that would relate to the egregiousness of Defendants' conduct after the jury's verdict. *See, e.g.*, *Mondis Tech.*, 822 F. Supp. 2d at 653 (considering InnoLux's corporate attitude, which was reflected by a statement made by its CEO's after trial that said in part: "[t]he issue of patent infringement is taken too seriously sometimes," was strong evidence that enhancement was warranted). Nevertheless, after balancing the *Read* factors, the Court considers Defendants' continued infringement to be unreasonable, deliberate and willful in nature. As such, the Court enhances the jury-determined rate by 1.5 times. Enhancing the jury-determined rate by 1.5 times creates an ongoing royalty rate of six cents per product for the '884 Patent and three cents per product for the '029 Patent. The Court's decision to enhance the ongoing royalty rate in this manner is consistent with other courts in this district. *See Mondis*, 822 F. Supp. 2d at 653 (enhancing the ongoing royalty rate by two times); *Internet Machs. LLC v. Alienware Corp.*, No. 6:10-CV-23, 2013 WL 4056282, at *21 (E.D. Tex. June 19, 2013) (enhancing the ongoing royalty rate by1.5 times); *Affinity Labs*, 783 F. Supp. 2d at 905 (enhancing the ongoing royalty rate by 1.33 times).

The Court next decides what products are covered by the ongoing royalty rate. The burden remains with the patentee to demonstrate the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product actually infringes. *TiVo Inc. v. Echostar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011). This can be

achieved by making a comparison between the original product, the modified product, and the claims. *Id.*

Imperium requests the ongoing royalty apply to Defendants' products made, used, offered for sale, or sold in the United States, including (1) any phone, laptop, or tablet with flicker reduction functionality for the '884 Patent; and (2) any phone or camera with camera flash functionality for the '029 Patent. Imperium argues Defendants update models of phones and tablets throughout the year, and these updated models are no more than colorable variations of infringing adjudicated products.

The Court finds Imperium has not met its burden of demonstrating it is entitled to an ongoing royalty for additional, unadjudicated products. Imperium has not shown how additional, unadjudicated products are no more than colorable variations of products already litigated in this case. Besides a chart that identifies a number of Defendants' products that are "reasonabl[y] similar to" adjudicated products, Imperium provides no explanation how each of these products contain potentially infringing features of the either the '884 or '029 Patents (Dkt. #380, Exhibit 3). Because Imperium has not met its burden, the Court cannot award an ongoing royalty for unadjudicated products that may be no more than colorably different from products found to infringe. Accordingly, Imperium is entitled to an ongoing royalty only for all adjudicated products.

## CONCLUSION

It is therefore **ORDERED** that Imperium IP Holdings (Cayman) Ltd.'s Motion on the Appropriate Ongoing Royalty (Dkt. #380) is **GRANTED IN PART** and **DENIED IN PART**. The Court awards to Imperium an ongoing royalty of six cents per adjudicated product for the '884 Patent and three cents per adjudicated product for the '029 Patent.

**SIGNED this 13th day of September, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE